KING and others *v.* WOODHULL and others.

---

Although, as a general rule, a residuary legatee is entitled as well to what remains, as to whatever falls by lapse, invalid disposition or casualty, yet to entitle him to a lapsed or void legacy, he must be legatee of the residue generally and not partially.

Where it is manifest that the residue given is confined to a particular fund or property, the residuary legatee will be kept to it strictly.

To exclude a lapsed disposition from the gift of the residue, very special words and express terms must be used.

A bequest of residue, after payment of debts and legacies, is broad enough to allow the residuary legatee to take a lapsed legacy.

Whether the court of chancery of this state, in its administration of charities under its common law powers, (for there are no statutes of charitable uses or mortmain in this state,) will give effect to a bequest or gift indefinite, where neither a trustee nor the objects of the charity are designated, is still an open question. The court was inclined to consider the weight of authority in favor of recognizing the English law of charitable uses which allows them ; and, consequently, allowed a gift to a charity where the bequest was not to a trustee, but immediate to an unincorporated voluntary association, the Home Missionary Society, to be paid upon the receipt of its treasurer for the time being, though the object of the bequest was not specified, nor were any purposes specified to which the money was to be applied. However, it appeared that the testatrix knew the objects of the society, and the charitable purposes for which it was formed, she being a member of it for life.

---

*Jan.* 26.
1837.

*Will.
Charitable
uses.*

THE bill in this cause was filed by the residuary legatees of the late Hannah Woodhull ; and its object was to settle the construction of her will in relation to certain legacies, and to to call the executors to an account.

This will was made on the twelfth day of March, one thousand eight hundred and thirty ; and the testatrix died in February following. The first clause of it was in these words : " I give and bequeath the sum of one thousand dollars for the use and benefit of my unfortunate son, James Woodhull, to be appropriated at the discretion of my executors hereinafter named, whom I hereby direct to take the special care and charge of my said son during life ; and so much of the said sum of one thousand dollars as my said executors shall not

appropriate for the use or benefit of my said son during his life, I give, at his decease, to the Foreign Mission School for the religious education of young men."

And after various other legacies, and a devise of a part of her real estate, (about which no question had been raised,) the testatrix proceeded : " Also I do hereby authorize, empower and direct my executors hereinafter named, and the survivors of them, as soon after my decease as they, in the exercise of a sound discretion, may think proper and advantageous to my estate, to sell and dispose of all my moveable property, not herein specifically bequeathed ; and also to sell and convey all my real estate not hereinafter devised, and to collect the debts due to me ; and, out of the proceeds thereof, to pay all my just debts and the several legacies hereinafter bequeathed ; and the residue thereof, provided the same does not exceed one thousand dollars, I give and bequeath to the American Home Missionary Society, to be paid upon the receipt of the treasurer of the said society for the time being.  And the residue and remainder of my estate, after the payment of the said one thousand dollars to the said missionary society, if any there shall be, I give and bequeath to the children of my niece, Eliza King, to be equally divided between them."

The complainants were the children of the testatrix's niece, Eliza King.  The son of the testatrix, James, spoken of in the will as her *unfortunate son*, was an idiot.  At the time the will was made, the latter was possessed of a large personal property, independent of his mother's estate ; and the care and custody of his person and estate, previous to the death of the testatrix, had been and was then vested in a committee who had been appointed by the court of chancery.  The amount of his property was upwards of forty thousand dollars, and the income was much more than sufficient for his comfortable support and maintenance ; so that the capital of his estate had been gradually increasing for years in the hands of this committee, by the addition of the surplus income.

It appeared that his situation, with respect to property, and how he was provided for by the committee, were well known to his mother, as he lived with and was taken care of by her, his committee regularly paying her for his board, clothing and the care she took of him.

It was also admitted, in relation to the bequest to the *Foreign Mission School*, that there was no such school or society in existence; and that there was no body of persons answering to this description to claim the one thousand dollars mentioned in the first clause of the will.

The *American Home Missionary Society*, who were named as residuary legatees to the extent of one thousand dollars, existed under that name, not incorporated, but made up of a voluntary association of persons under articles. These articles contained rules and regulations for the government of the society and the management of its affairs. The chief object of the society was to afford assistance to religious congregations who were unable to support a gospel ministry and to send the gospel to the destitute within the United States. The officers of the society were, a president, vice-president, treasurer, auditor, corresponding secretary and directors, (annually chosen,) together with life directors. The treasurer was to have charge of the funds arising from membership and voluntary donations, and these funds were to be applied, through executive committees, appointed by and acting under the supervision of the board of directors, to the charitable purposes of the society. The testatrix was a life member; and by the payment of this legacy, the executors of her will would be entitled to membership according to the articles of association. The testatrix, at the time of making her will, well knew the object of the society; its organization; and made the bequest knowingly.

The treasurer was made a party defendant; and claimed payment of the one thousand dollars out of the residuary estate. The complainants insisted that the bequest was contrary to law and void; and that this one thousand dollars passed to them under the bequest of the residue.

So, likewise, with respect to the sum of one thousand dollars mentioned in the first clause of the will, the complainants insisted that it was not a legacy which vested in the son; that the money might never be required for his use; and that the gift over to the foreign mission school, being confessedly void, it must remain in the hands of the executors as a part of the residuary estate; and, at the death of the son, if not before, would belong to the complainants as residuary legatees.

Mr. *D. Lord, Jr.*, for the complainants.

Mr. *Storrs*, for defendants.

THE VICE-CHANCELLOR :—The first question to be considered, is : whether, supposing the two bequests of one thousand dollars each to be void in law or incapable of taking effect as specific bequests, the right of the residuary legatees extends to and embraces these sums ? That question, in the present case, is governed by the rules which apply to gifts of personal property ; for, so far as real estate is concerned, it is converted into personalty by the direction to the executors to sell and apply the proceeds indiscriminately to the payment of debts and legacies. This operates as a conversion " out and out :" Roper on Leg., 341, 342 ; Ram. on Assets, 206. And as a general rule with respect to residuary bequests of personal estate, a residuary legatee is entitled not only to what remains after the payment of debts and legacies, but also to whatever may by lapse, invalid disposition or any casualty, after the making of the will, fall into the residue : 2 Roper on Leg. 453 ; *James* v. *James*, 4 Page's C. R. 117.

To entitle a residuary legatee to the benefit of a lapsed or void bequest, however, he must be a legatee of the residue generally, and not partially so ; for, where it is manifest, from the express words of the will, that a gift of the residue is confined to the residue of a particular fund or description of property, or to some certain *residuum*, he will be restricted to what is thus particularly given, since a legatee cannot take more than is fairly within the scope of the gift. But to exclude what may fall by lapse or invalid disposition, from the gift of the residue, as it may be supposed that the testator did not intend to die intestate as to any portion of his property, when he set about making a will, and is supposed to exclude the residuary legatee only for the sake of the particular legatee, the law requires that he should use very special words, clearly limiting the gift of the residue, and showing in express terms, an intention to exclude such portions of his estate as may fail to pass under previous clauses of the will, in order to take it out of the general rule above stated : 2 Roper on Leg., 457 ; *Bland* v. *Bland*, 2 Jac. and W. 404, 406.

Instances of such limited gifts of the residue are found in *Davers* v. *Dewes*, 3 P. Wms., 40 ; and in *The Attorney General* v. *Johnston*, Amb. 577.

So, in the more recent case of *Ommaney* v. *Butcher*, Turn. and Russ., 260, where the distinction between a gift of the residue generally, and a gift of the residue restricted in its terms to the residue of a particular portion or description of property, was followed by Sir Thomas Plumer, M. R., who held, that the words : " In case there is any money remaining, I should wish it to be given in private charity," taken in connexion with the preceding part of the will, were to be confined to the residue of the produce of articles which the testator had directed to be sold, and did not comprehend the general residue of the testator's personal estate, consisting of a lease-hold property and money in the funds. The principle of these cases has been followed by the court of appeals of South Carolina, in *Peay and Pickett* v. *Barber*, 1 Hill's Ch. R. 95, which contains a just exposition of the law with regard to the rights of residuary legatees, and in which that court, upon the construction of the will and the intention of the testator, held that a gift of " all the rest of my property not disposed of, &c." was to be confined to a particular description of property, and did not include a specific legacy lapsed by the death of the testator's wife. From these and other cases on this subject, it will be seen that, in considering a residuary clause in a will, the court will look at the context to ascertain, not so much whether it was the intention that the residuary legatee should take the benefit of a lapsed bequest (for it may be argued, in most cases, that the testator does not mean that the residuary legatee should take what is previously given from him, for he does not contemplate the case,) but whether the words used are so strong and expressive, as necessarily to exclude property which falls in by lapse, and to limit the bequest of the residue to a particular residue, instead of permitting it to read as a general residuary bequest.

There can, then, be no difficulty as to the principle on which the courts act. The only difficulty is in the application to particular cases. In the case under consideration, the residuary bequest in favor of the complainants is not confined to the residue of any thing in particular ; but is general of the whole

residue, whatever it may be, notwithstanding the expressions, " giving the residue after payment of debts and previous lega- cies." The Home Missionary Society are residuary legatees, in the first instance, to the extent of ten thousand dollars, after payment of just debts and the previous legacies. It could hardly be said, that if a previous legacy lapsed and that money was necessary to make up the one thousand dollars, the Home Missionary Society would not be entitled to it, provided the bequest to them is unexceptionable in other respects. The be- quest of the residue to the complainants, after payment of the one thousand dollars, is of the same character. It is not limi- ted ; and there are no special words referring to any particular property as the subject of the gift over. " After payment of debts and legacies," or, after payment of legacies specified or recapitulated in the residuary clause itself, are not restrictive of the bequest to any particular or partial residue ; but the be- quest after all is general of the remainder, and may be so un- derstood without doing violence to the expressions of the will. Where the residuary clause is thus worded, the legatee is as much a general legatee of the *residuum* of the estate, as if such words were not used. In some of the cases, where the court has decreed the residuary legatees entitled to the benefit resulting to the estate from lapsed or void bequests, the lan- guage of the will has been stronger in favor of a construction which would exclude them, than in the present case. I will instance only two : *Shanley* v. *Baker*, 4 Vesey, 732, and *Roberts* v. *Cooke*, 16 Vesey, 451.

In the first of these, the testator gave all the rest and resi- due of his estate, using the words, " not by me herein before disposed of;" and yet, leasehold property given as a legacy, void by the statutes of mortmain, was decreed to belong to the residuary legatee. In the second, a like construction was given to similar words as passing to the residuary legatee the amount of a legacy lapsed by death in the testator's lifetime. My conclusion upon this branch of the case is, that the com- plainants are to be deemed general residuary legatees under the will and entitled to all that may fall into the residue by lapse or the failure of other bequests.

The next question is, whether there is any failure or ineffec- tual disposition of property by this will ? The complainants

insist, that the legacy of one thousand dollars, in favor of the Home Missionary Society, is of that character; that it is a bequest without any person or body of persons, known to the law, competent to take either as trustees or *cestuis que trust;* and hence, that it cannot be supported either as a trust or as a gift to a charitable use—the latter being unknown to the laws of this state.

In a strict legal view, this legacy cannot be supported. It is given, not to any one or more persons in trust for the society, but directly to the society itself, a voluntary association of persons, without any legal capacity to take or hold property in the name of their association. Having no charter or act of incorporation, the society, as such, is not invested with any legal rights; and a grant or devise to the society *eo nomine* would pass no legal title. Nor do I see how the individuals composing the society can claim to be the legatees; for the gift is not to them individually, as joint-tenants or as tenants in common, or in trust for the society. Such is not the form of the gift or the manner in which they were to take. It may be fair to say, the money was intended to be paid to the treasurer of the society, though it is not even so expressed. The direction of the will is, that the money be paid upon the receipt of the treasurer. At the utmost, he is merely the recipient and not the legatee; he is only the instrument by which the money is to be conveyed into the coffers of the society, there to constitute a part of its general funds, subject to the control and disposition of those who may have the management of the society's affairs in their collective and official capacity; but not as individuals to whom money is bequeathed in trust or who derive any authority from the will or from the laws of the state in relation to its use and application. Nor do I perceive how it can be regarded as a legacy to which a trust is attached which this court can enforce in the exercise of its ordinary powers over subjects of trust. If a trust were declared by the will and the beneficiaries were designated or named, the court would have no difficulty in supplying the want of a trustee to take and execute the trust. But the court cannot undertake to provide beneficiaries where none are pointed out or to execute a

trust which is altogether vague and indefinite in its object.
As there is no designation in this will of beneficiaries who
could come forward and claim to be the *cestuis que trust*
entitled to the benefit of the gift, and as the nature and pur-
poses of the trust are not declared, it appears to me difficult
to support the gift on the ground of its being clothed with a
trust. But it is claimed to be a valid and effectual gift to a
charity ; and the doctrine of charitable uses and the powers
and jurisdiction of the court of chancery in matters of that
sort are invoked to support it. There can be no doubt that in
England, under the equity of the statute of 43 Elizabeth,
called the statute of charitable uses, and in the exercise of the
authority which that statute conferred upon the Lord Chan-
cellor, as well as of the common law jurisdiction of the court,
or else in the exercise of a branch of the king's prerogative to
protect and enforce all charities of a general and public nature,
where there is no trustee and where the objects, being indefi-
nite, consequently devolve on the king as *Parens Patriæ* to
administer, and for which purpose he is supposed to delegate
his authority to the Lord Chancellor, as the keeper of his con-
science, or perhaps from a combination of all these powers,
such a legacy as the present would be upheld as a charity ;
though, by the statute of mortmain, 9 Geo. 2, many charita-
ble gifts by will are now prohibited.

In New-York, we have no statute of charitable uses and
none of mortmain ; no positive enactment to sanction, and
none to forbid the making of grants or devises of that nature.

The question then is, whether, in virtue of the common
law powers of this court or of a supposed emanation of sov-
reignty appertaining to the court, like that of the king's pre-
rogative and independent of any statutory provision, bequests
for charitable purposes, which have not the effect of passing
a legal title, can be sustained in equity : and, to what extent ?

I think it is to be regretted that this subject, which seems
to be one of increasing importance, has not found a place in
the revised statutes of this state, and that the jurisdiction of
this court, in relation to charitable donations of a public na-
ture, has not been declared. The decisions of the courts of
this state have likewise gone but a little way towards settling
the question as to how far the doctrine of charitable uses and

the jurisdiction of the court of chancery in England or of the
Lord Chancellor, as keeper of the king's conscience, applies
here or is possessed by this court.

Chancellor Jones, in the *Orphan Asylum Society* v. *Mc
Cartee*, 9 Cowen, 440, has shown that, anterior to the statute
43 Eliz., the court of chancery had jurisdiction over charities;
and that the administration of them formed a part of its more
ancient equity system; that the statute did not confer a new
jurisdiction upon the court, at least as to cases such as he was
considering, where the devise, according to his construction,
was a devise to executors, as trustees, for the benefit of a cha-
rity, the purposes of which were ascertained by reference to
the objects for which the Orphan Asylum, an incorporated
society, was established. To carry into effect a bequest to a
charity, where it is made to trustees and the objects are defin-
ed or so far designated as not to be mistaken, it could not ad-
mit of a doubt that the court had jurisdiction anterior to and
independent of the statute; and thus far his opinion was not
disturbed by the reversal of his decree in the appellate court.

So, in *Coggeshall* v. *Pelton*, 7 John. Ch. R. 292, before
Chancellor Kent; a legacy to the town of New Rochelle for
a particular purpose expressed in the will, it being a public
charity and the object declared, though there was no trustee
named, yet the legacy was held to be valid; and the gift was
carried into effect, as a gift to a charitable use, in the exercise
of the common law powers and jurisdiction of the court. But
how much farther the common and ordinary jurisdiction of
chancery extends over charities, whether to the administration
of such as are vague and indefinite, where there is neither a
trustee nor object of the charity designated, is not attempted
to be shown in the above cases. Chancellor Jones, indeed,
purposely avoided giving an opinion on this part of the sub-
ject. He observes " whether the court has the power to carry
into effect a mere general charitable intent or purpose, where
no particular person or specific object is designated to take
the bounty or whether the purposes intended to be promoted
by the charity are too vague or indefinite, or the persons to
be benefited too uncertain or too imperfectly described to be
brought before the court in the ordinary forms for adjudication
and whether an information in the name of the attorney gene

ral, in such cases, becomes necessary and would be available or whether the charity must entirely fail, were questions he was not then called upon to decide." See 9 Cowen, 488, 489.

These questions I regard as still open questions in the courts of this state, whatever may have been decided elsewhere in the American courts on this subject; and the case in hand appears to me to involve, more or less, the consideration of them. The legacy in controversy is a gift to a charity, which, upon the face of the will, is left vague and indefinite; no persons being there designated who are to be benefited by it; the object of the bequest not specified; nor any particular purpose to which the money is to be appropriated pointed out by the will. Yet, as the testatrix must be supposed to have known the purposes for which the society was formed, (she having been a member of it many years,) how its affairs were conducted, and to what objects and uses, in general, its funds were applied; and as it was manifestly her intention to aid the funds of the society and to promote its usefulness by this donation, (thereby, it is true, evincing a very general charitable intent towards the society,) it is easy to conclude that the purposes and objects she had in view were the same as those of the society itself; and, by looking into the fundamental articles of the association, they may at once be seen and understood. It may, then, be said to be a public charity that was here intended, the objects of which, though at first indefinite, are capable of being ascertained; and, when ascertained, are found to be neither inconsistent with law nor against public policy. Is it not, then, such a charity as this court can assist to administer, if necessary, and such as it has power to uphold and protect? In the English court of chancery, as already shown, there would be no doubt upon the subject; and the weight of judicial authority in this country, so far as the subject has been investigated (and in a few cases it has been most thoroughly so) appears to be in favor of recognizing the law of charitable uses and the jurisdiction and power of the court of chancery over them to the same extent that it is exercised in England independently of any statute and as it existed anterior to that of the 43 Elizabeth. A reference to the cases will be found in 2 Kent's Com. 3d ed. 284, 287, and in 2 Story's

Eq., but I would particularly refer to the case of *Burr's Exe-* 1837.
*cutors* v. *Smith*, 7 Vermont R. 241, and to the case of *Sarah*
*Zane's Will*, (in pamphlet) before Mr. J. Baldwin, Cir. Court
of U. S. where the whole doctrine has been most elaborately
discussed.  See also *Potter* v. *Chapin*, 6 Paige, 649.

KING
*v.*
WOODHULL.

While I yield my assent to the doctrine for the purposes of
the present case, and think the view I have taken of this be-
quest, as a bequest to a charitable and pious use, may possi-
bly enable this court to ascertain sufficiently its object, so as
to see to its proper application, and prevent, if necessary, a
diversion of the fund and that the court has jurisdiction for
this purpose, I must confess that my own mind is by no means
free from doubt as to whether this is not a case where the gift
in that respect is not too vague and indefinite to be supported ;
and whether the courts of this country, without an express
statutory authority, are not going too far, when they say, as
the court in Vermont, in the case of the Burr Will, has said,
that a gift to a charitable use may be decreed, notwithstanding
the objects are vague and indefinite and notwithstanding the
persons, who are to carry into effect the intent of the testator,
are a society unincorporated and in that capacity are designed
to take the bequest.  If the legacy, now in question, were of
greater amount and the complainants in this cause were of
sufficient ability to bear the expense, I should very much de-
sire that this cause might go up on appeal, in order that the
question might be definitively settled in this state, how far the
doctrine of charitable uses can be carried and bequests to cha-
rities supported, under the jurisdiction and by the authority of
this court ?  Of the propriety of going further with this cause,
however, the parties must themselves judge.

The next question to be considered is, in relation to the one
thousand dollars given for the use of the testatrix's idiot son.
The committee of his person and estate claim, that, if this be
not a legacy vesting in him and to be added to his estate, it is,
at all events, a sum of money which is to be applied by the
executors to his support, though the times and manner of its
application are in their discretion ; that it is not a mere power,
which is given to the executors to appropriate this sum or not,
as they may think proper, but the creation of a trust in favor
of the idiot, which a court of equity will duly enforce.   Clear

ly, this is not a legacy to the son, so as to vest in him or in his committee the right to receive and add any part of it to his estate. Such is not the form of the gift; and it appears not to have been the testatrix's intention : for so much of the money as his executors shall not appropriate for his use or benefit during his life, is, at his death, expressly disposed of otherwise. The testatrix knew the unfortunate condition of her son with respect to mental capacity. At the same time she knew how abundantly he was provided with means of support, independently of her help, and that those means would always be at command for his comfortable support, through the medium of his committee, who were charged by this court with the care of his person and the safe-keeping and management of his estate. It could not, therefore, have been for his ordinary support or to supply necessaries or to relieve his actual wants that this provision was made. Probably a mother's anxiety to do something for an unfortunate son, as she calls him, a sense of duty towards her offspring, and a desire not to be understood as forgetting or entirely overlooking him in her will, induced her to place this one thousand dollars in the executor's hands, with a request or direction to have a special superintending care and charge over him during his life ; not a charge or care which should interfere with that already conferred by law upon others, but a sort of paternal care to add to his comforts and to ameliorate his condition, if possible ; and for this purpose to appropriate the money to his use at the discretion of the executors, whenever they should see an opportunity of doing so to his advantage. In this view of the first clause of the will, it will be seen that it is not a gift of a legacy to the son or to the executors absolutely in trust for him ; but a temporary provision made for his benefit, under a discretionary power vested in the executors, to be exercised not in appropriating the money towards ordinary support and maintenance, which his committee are bound to provide out of his own estate, but in connection with that special superintending care and charge of him which, by the will, they are directed to take and to which I have alluded. This money must remain with the executors to answer the purpose thus intended during the life time of the idiot; and it will be proper for them to place it at interest ; and whatever may remain

of the fund unexpended for the above purpose at his death, will then go to the residuary legatee of the money: *Upwell* v. *Halsey*, 1 P. Wms. 651.

As there is no "Foreign Mission School, &c," such as is mentioned in the will, to take as the residuary legatee, the money will belong to the complainants in this cause, as the general residuary legatees of the estate.

No other questions, I believe, are presented but those which I now have disposed of. The decree must declare the rights of the complainants, as general residuary legatees of the estate; that, as such, they will be entitled to what may remain of the one thousand dollars in the hands of the executors, at the death of the idiot, there being no "Foreign Mission School, &c," named as the first residuary legatees of this particular fund; that the executors will be justified in paying the one thousand dollars or so much of it as there may be in hand to pay to the treasurer of the "American Home Missionary Society," as a valid bequest to a charitable use; and all the residue of the estate they must account for to the complainants; and the shares of such and so many of them as are infants must be brought into court to be invested for their use until they come of age.

As to the matter of costs, I think it is proper that the defendants, the committee of the idiot James H. Woodhull, should bear their own costs out of his estate in their hands; and that the defendant, Knowles Taylor, should pay his own costs out of the legacy coming to him. In this direction I am warranted by what is said on the subject of costs in *Hampson* v. *Brandwood*, 1 Mad. R. pages 394, 395. The complainants' costs and also the executors' to be paid out of the general residuary estate, and to be allowed to the executors in the settlement of their accounts.