BANKS and others, executors, &c. *vs.* PHELAN and others.

A provision, in a will, giving to three persons, and the survivor of them, the interest of $1000, to be paid so long as they, or either of them, shall live, is void, because it suspends the power of alienation for a longer period than two lives in being at the death of the testator.

Banks *v.* Phelan.

And a bequest of the principal sum of $1000, upon the death of the last survivor of the three legatees to whom the interest of that sum is given for life, is also void.

A bequest to a religious society, as such, is valid as a gift for pious and charitable uses, where there is no doubt or uncertainty as to who was the legatee intended; although the society is not incorporated.

A testatrix, by her will, gave the sum of $2000 to Bishop E. of South Carolina, in trust for the ladies of the Ursuline Order, residing in Charleston, in the state of South Carolina. At the time when the will was executed there was an institution, in Charleston, which had been incorporated by the name of "The Ladies' Ursuline Community of the city of Charleston," which was founded by Bishop E., and was still in existence, and was known and spoken of invariably as "The Ladies of the Ursuline Convent," or "Order." And there was not, and had not been, any other similar society, or institution, in the state of South Carolina; *Held* that the bequest was valid; the circumstances rendering it certain, beyond a question, who was intended by the description contained in the will.

It is a well settled rule in equity that, upon the principle of explaining a latent ambiguity, if it can be ascertained who is the person intended by the testator, a legacy will not be permitted to fail on account of a defective description of the legatee.

The general rule is well settled that a residuary legatee is entitled not only to what remains after payment of debts and legacies, but also to the residue caused by a lapsed legacy, or an illegal or invalid disposition.

The only exception to this rule is where the words used in the will expressly show an intention, on the part of the testator, to exclude such portions of his estate as are mentioned in any of the previous clauses of the will, from falling into the general residue.

The words "if any there shall be, after paying the preceding legacies, devises, and bequests," contained in the residuary clause of a will, will not bring a case within the exception to the general rule, so as to limit the residuary disposition to any particular or partial residue.

In Equity. The bill in this cause was filed by the executors of Eliza McCarthy, late of the city of New-York, deceased, against the heirs, devisees, and next of kin of the decedent, for a construction of the last will and testament of the testatrix. The will was executed on the 5th of January, 1842, and the testatrix died on the 8th of July thereafter. The will contained the following provisions:

"Second, I hereby order and direct, that my said executors shall dispose of all the property and estate of which I may be possessed, or to which I may be entitled at the time of my decease, as follows, that is to say: First, All my just debts, if

any, and the expenses of my funeral, to be paid as soon as may be after my decease. Second, I give and bequeath to my sister Margaret McGowan, wife of William McGowan of Petersburg, Virginia, and to her heirs, (except her daughter Mary Jane Wilcox, and the descendants of her said daughter,) the sum of seven thousand dollars. Third, I give and bequeath to my niece Mary Jane Wilcox, wife of John P. Wilcox of Flower de Hundred, near Petersburg, Virginia, and to her heirs, the sum of six thousand dollars, and also all my silver tea set, containing a tea pot, sugar dish, milk pot, one dozen dessert knives, one dozen dessert forks, and two small silver plated waiters. Fourth, I give and bequeath to my said sister Margaret McGowan, and to my said niece Mary Jane Wilcox, my likeness and that of my daughter. Fifth, I give and bequeath to my said sister Margaret McGowan, all my silver plate and plated ware, (except the said articles bequeathed to said Mary Jane Wilcox,) all my table and bed linen, my wearing apparel and jewelry, except my gold watch and chain. Sixth, I give and bequeath to my niece Mary Phelan, wife of Mr. Hawn, late state treasurer of the state of Alabama, and now cashier of the State Bank of Alabama at Tuscaloosa, and to her heirs, the sum of six thousand dollars, and also my gold watch and chain. Seventh, I give and bequeath to my brother John Phelan of Huntsville, Alabama, the interest of seven thousand dollars, during his natural life, the said sum of seven thousand dollars to be securely invested immediately after my decease by my said executors on bond and mortgage on real estate in the city of New-York, at lawful interest, and said interest above given and bequeathed, to be made payable to my said executors, and to be paid by them to my said brother semi-annually after the end of the first year after my decease. Eighth, I give and bequeath upon the decease of my said brother John Phelan, to his three sons my nephews, John D. Phelan, Joseph Phelan, and James Phelan, and their heirs, the said principal sum of seven thousand dollars, said principal sum to be equally divided between the said John D., Joseph and James. Ninth, I give and bequeath to my early and constant friend Mrs. Ellen

Banks v. Phelan.

Coxe, (now residing with her mother, Mrs. Sullivan, in the city of Brooklyn,) and to her heirs, as a token of remembrance, the sum of one thousand dollars. Tenth, I give and bequeath to my kind and valuable friend Miss Gracia Bay, (daughter of the late Judge Bay,) of Charleston, South Carolina, and to her heirs, in token of remembrance, the sum of one thousand dollars. Eleventh, I give and bequeath to my young and much beloved friend, Mrs. Emily Frith, daughter of Louis Binsse, Esquire, of Beach-street, New-York, and to her heirs, as a token of remembrance, the sum of one thousand dollars. Twelfth, I give and bequeath to Mrs. Priscilla Hawes, widow of the late William P. Hawes, counsellor at law of the city of New-York, as a token of remembrance, the sum of one thousand dollars. Thirteenth, I give and bequeath to Mrs. Beardsley, (wife of Hon. Levi Beardsley, late senator of this state,) of Oswego, New-York, and to her heirs, the sum of five hundred dollars. To Phebe, (wife of Azariah C. Flagg, Esquire, late comptroller of this state,) of the city of Albany, and to her heirs, the like sum of five hundred dollars; and to Louisa G., (wife of Philip Reynolds, Esquire, counsellor at law,) of the city of New-York, and to her heirs, the like sum of five hundred dollars, for their disinterested friendship during a season of great trial. Fourteenth, I give and bequeath to Maria, (wife of Francis Cooper, Esquire,) of Laurens-street, New-York, and to her heirs, as a token of remembrance, the sum of five hundred dollars. Fifteenth, I give and bequeath to Flora Buckley, grand-daughter of Mrs. Thomas Battell, with whom she resides in Broome-street, New-York, and to the heirs of the said Flora, the sum of five hundred dollars, to be paid to her by my said executors, when she arrives at the age of eighteen years, and in case of my decease before the said Flora shall attain said age, it is my will that my said executors shall securely invest the said sum of five hundred dollars at lawful interest for the benefit of the said Flora, and on her attaining the said age of eighteen years, my said executors shall pay to her the said sum of five hundred dollars and the interest thereon, said bequest being a token of remembrance of the many attentions received by me and my

Banks *v.* Phelan.

beloved and lamented daughter from the excellent mother of the said Flora, during our sojourn at St. Croix. Sixteenth, I give and bequeath to Margaret, Alice and Betsey Farrell, (three maiden sisters,) late of St. Croix, now residing at No. 44, First-avenue, New-York, and to the survivor of them, the interest of one thousand dollars, to be paid semi-annually by my said executors, as long as the said Margaret, Alice and Betsey, or either of them, shall live. Seventeenth, I give, devise and bequeath, upon the death of the last survivor of the said sisters Margaret, Alice and Betsey Farrell, the said last mentioned sum of one thousand dollars to the Roman Catholic Orphan Asylum in Prince-street, New-York. Eighteenth, I give and bequeath to Julia O. Brien, (my present chambermaid,) the sum of one hundred dollars provided she is in my service at the time of my decease. Nineteenth, I give, devise and bequeath to the Roman Catholic Church of Petersburg, in the state of Virginia, the sum of three thousand dollars. Twentieth, I give, devise and bequeath to the Right Reverend Bishop England, of South Carolina, the sum of two thousand dollars, in trust for the ladies of the Ursuline Order residing in Charleston, in the state of South Carolina, in case they are in this country at the period of my decease. In case said ladies of said order are not in this country at the period of my decease, then I give, devise and bequeath the said sum of two thousand dollars to the Right Reverend Bishop Hughes in trust, to be by him applied towards the endowment and for the benefit of the Roman Catholic College at Fordham, in the county of Westchester. Twenty-first, I give and bequeath to Mrs. Sarah P. Anderson, of St. Augustine, in Florida, the sum of one thousand dollars in trust, nevertheless, that she shall apply and expend the same for the use and benefit of the Roman Catholic Church in St. Augustine, at such time, in such manner, and in such sums as she in her discretion shall deem most for the interest and advantage of said church; and in case I should survive the said Sarah P. Anderson, then I give and bequeath the aforesaid sum of one thousand dollars to the clergyman for the time then being of said church, in trust for the said church, to be applied by him

as aforesaid.   Twenty-second, I give, devise and bequeath to
the Roman Catholic Half Orphan Asylum, of the city of New-
York, the sum of one thousand dollars.   Twenty-third, I give,
devise and bequeath to the Right Reverend Bishop Hughes and
his successors in this diocese for ever, my pew in Saint Patrick's
Cathedral, in the city of New-York, in trust, to apply the in-
come therefrom annually, after paying the ground rent on said
pew, towards the support and maintenance of the Roman Cath-
olic Half Orphan Asylum in the city of New-York; and in
case of breaking up or dissolution of said institution, then said
income to be applied annually by said bishop and his succes-
sors, to the Roman Catholic Orphan Asylum in Prince-street,
in the city of New-York.   Twenty-fourth, I give, devise and
bequeath to the Right Reverend Bishop Hughes, in trust for
the Lying-in Asylum for destitute females in Orange-street,
near Prince-street, New-York, the sum of five hundred dollars,
which amount when received by him in pursuance hereof is to
be paid over to the directors or directresses of said asylum.
Twenty-fifth, I give, devise and bequeath all the rest and resi-
due of my property, including the money which may be real-
ized from the sale of my household furniture hereinafter directed
to be made, (if any there shall be after paying the preceding
legacies, devises and bequests,) to the Roman Catholic Orphan
Asylum in Prince-street, New-York, and to the Right Reverend
Bishop Hughes, and his successors in this diocese, in trust, to be
applied towards the endowment and for the benefit of the Ro-
man Catholic College at Fordham, in the county of Westches-
ter, an equal sum to said Orphan Asylum in Prince-street, and
to the said Bishop Hughes in trust, for the object aforesaid.
Twenty-sixth, It is my will, and direction to my said executors,
that they sell at public auction, all my household furniture,
except such as is herein bequeathed, at such time as they shall
deem proper.   It is also my will, and direction to my said exec-
utors, that neither of the legacies, devises, and bequests herein
given and bequeathed, is to be paid until one year after my
decease.   And it is also my will, and direction to my said exec-
utors, that if after paying the legacies, devises, and bequests

herein, up to, and including that numbered "eighteenth," it shall be found that there is not sufficient to pay the remaining specific legacies, devises and bequests, then and in that case it is my will, and direction to my said executors, that such sum or sums of money as my said executors may have collected or remaining in their hands after paying the said legacies, devises and bequests, up to and including that numbered "eighteenth," shall be invested and kept at interest by them until the end of two years after my decease, at which time, or as soon thereafter as conveniently may be, they are hereby directed to pay the other legacies, devises and bequests."

The bill stated that the executors had paid the funeral charges and all the debts owing by the decedent, and most of the legacies given by her will. But that the legacy of $6000, mentioned in the 6th article of the will, given to the testatrix's niece, Mary Phelan, and her heirs, described in the will as the wife of Mr. Hawn, of Alabama, had not been paid, in consequence of the alleged death of Mrs. Hawn, on the 18th of February, 1842, in the lifetime of the testatrix; the executors being advised that by reason of Mrs. Hawn's death in the lifetime of the testatrix, the legacy became a lapsed legacy, and fell into the residue of the testatrix's personal estate. That the children and heirs at law of Mrs. Hawn had filed a bill before the vice chancellor of the first circuit, against the executors, to compel the payment to them of the legacy given to their mother; to which bill the executors had demurred; that the demurrer had been argued and submitted to the court, but that the cause was not yet decided. That on or about the 18th day of August, 1845, the executors received a letter purporting to be written on behalf of Mrs. Margaret McGowan of Petersburg, Virginia, the sister of the testatrix, and on behalf of John Phelan of Mobile, Alabama, a brother of the testatrix, by which letter the said Margaret McGowan and John Phelan, as the next of kin of the said testatrix, claimed to be entitled to the said legacy of $6000 given to Mrs. Hawn, in consequence of the death of Mrs. Hawn in the lifetime of the testatrix; and by which letter the said Margaret McGowan and John Phelan claimed, as the

Banks *v.* Phelan.

next of kin of the testatrix, the legacy of $100 given in the 18th article of the will, to Julia O'Brien, in consequence of the legatee's having left the service of the testatrix before the death of the testatrix. That the said Margaret McGowan and John Phelan, as next of kin, also claimed to be entitled to all the money mentioned as the legacies given and bequeathed in the 16th, 17th and 19th articles of the will, and to all the money given and bequeathed in and by all the articles or clauses contained in the will from and subsequent to the 19th article. That the executors, on the 28th of October, 1845, received a notice from Bishop Hughes, the Roman Catholic Orphan Asylum in the city of New-York, and the society for the relief of the children of poor widows and widowers, that they respectively claimed payment of the legacies given in and by the 20th, 22d, 23d, 24th and 25th articles of the will; and that they also claimed all the money given in and by the will to persons who had died in the lifetime of the testatrix. The bill then set forth particularly the several questions which had arisen upon the construction of the will, and prayed that the several payments and investments which had been made by the executors, in pursuance of the directions of the will, might be declared to be good and valid; and that the true intent and meaning, and legal effect of the several articles or clauses of the will might be judicially expounded and settled, &c. The cause was heard on pleadings and proofs, as to all the defendants.

*W. S. Sears*, for the complainant.

*Cha's O'Conor*, for the defendants Hughes and the Roman Catholic Orphan Asylum.

*B. F. Butler*, for the defendants Phelan and McGowan.

*James W. White*, for the defendants Sarah P. Anderson and others.

*Wm. S. Banks,* for the defendants O'Brien and Farrells.

*Wm. Coit,* for John Hawn and others.

EDWARDS, J.   The first question which arises upon the construction of the will is, whether the legacy of $6000 given to Mrs. Hawn and her heirs, lapsed by her death before the decease of the testatrix.   This question was argued before the former vice chancellor of the first circuit, upon a demurrer to a bill filed by the heirs of Mrs. Hawn, against the complainants in this suit, and it was held by him, that the language of the will showed that it was the intention of the testatrix that the legacy should go to the heirs of Mrs. Hawn in case she died before the testatrix, and he made a decree accordingly.   That decree has never been appealed from.   The question here arises between different parties; but, as no objection is made by the residuary legatees to the construction given by the vice chancellor, and as the residuary legatees are, according to the view which I have taken of this case, the only persons interested in avoiding the legacy, I shall assume the construction of the vice chancellor to be correct.

The next question which was raised on the argument was as to the legacy to Julia O'Brien.   The will gives her $100 provided she shall be in the service of the testatrix at the time of her decease.   Whether Mrs. O'Brien was in the service of the testatrix at that time, is a fact in reference to which the executors are bound to satisfy themselves, and to ascertain which, they do not require the assistance of this court.

The next clause of the will which was considered questionable, is that which gives to Margaret, Alice and Betsey Farrell, and the survivor of them, the interest of $1000, to be paid so long as they, or either of them, shall live.   This provision suspends the power of alienation for a longer period than two lives in being at the death of the testatrix, and is void.   (1 *R. S.* 773, § 1.   *Gott* v. *Cook,* 7 *Paige,* 521, 540.)

The bequest contained in the next clause of the will, of the principal sum of $1000, upon the death of the last survivor of

Banks v. Phelan.

the three legatees, according to the rules laid down in the case of *Coster* v. *Lorillard*, (14 *Wend.* 265, 311,) is also void. (*See* 1 *R. S.* 773, §§ 1, 2. *Id.* 723, §§ 14, 15.)

The nineteenth clause of the will gives the sum of $3000 to the Roman Catholic Church of Petersburg, in the state of Virginia. It is contended that this bequest is void on the ground that there is no such corporation or association competent to take it. The proof shows that there was, at the time of the execution of the will, and now is, a religious society, professing the Roman Catholic faith, and known as the Roman Catholic Church of Petersburg, in the state of Virginia, and that there is, and has been but one society, or association, answering to that description. There is then, no doubt or uncertainty as to the legatee to whom the description was intended to apply. It appears, however, that this is an unincorporated institution, and it is contended that, for that reason, the legacy is void. The legality of bequests for pious and charitable uses, though for the benefit of unincorporated associations, is so well established in this state, that it is barely necessary to refer to the authorities. (*Potter* v. *Chapin*, 6 *Paige*, 639, 649. *King* v. *Woodhull*, 3 *Edw. Ch. Rep.* 79. *Wright* v. *Methodist Episcopal Church*, 1 *Hoffman's Ch. Rep.* 202. *Hornbeck* v. *American Bible Society*, 2 *Sandf. Ch. Rep.* 133.)

In this case, however, the bill does not create a trust. It gives the legacy directly to the objects of the bounty of the testatrix. In the case of *King* v. *Woodhull*, above cited, there was a similar bequest, and, although it was not made to a trustee, or to any person, or body of persons known to the law, yet it was held that it was such a charity as a court of equity, by virtue of its general powers, could protect and uphold, and if necessary, could assist to administer. The bequest in question is of a highly meritorious character, the objects of it are clearly ascertained, and this court acting in the spirit which has dictated the decisions made in this state in reference to public charities, should uphold it, and if necessary, as far as in its power, aid in its application.

The next clause of the will which was held to be objection-

able upon the argument, is that which gives the sum of $2000 to the Right Reverend Bishop England of South Carolina, in trust for the ladies of the Ursuline order, residing in Charleston, in the state of South Carolina. It was contended that there was no class or association of persons, to which this description applied. It appears by the testimony, that at the time when the will was executed, there was an institution in the city of Charleston, South Carolina, which had been incorporated by the name of "The Ladies' Ursuline Community of the city of Charleston;" that it was founded by Bishop England, and is still in existence; and that it was, and now is, known and spoken of invariably as "The Ladies of the Ursuline Convent," or "order;" and that there has not been, and is not, any similar society, or institution in the state of South Carolina. These circumstances render it certain beyond a question, who was intended by the description contained in the will. It is a well settled rule in equity, that upon the principle of explaining a latent ambiguity, if it can be ascertained who is the person intended by the testator, a legacy will not be permitted to fail on account of a defective description of the legatee. (*Parsons* v. *Parsons,* 1 *Ves. jun.* 266, *Sumner's ed. and authorities cited in note. Hornbeck* v. *American Bible Society,* 2 *Sandf. Ch. Rep.* 133.) The bequest is undoubtedly valid. But, inasmuch as the trustee mentioned in the will is dead, it will be necessary for the court to appoint some suitable person to supply his place.

It may also be said in reference to the objections made to the bequests contained in the twenty-first, twenty-second, twenty-third, and twenty-fourth clauses of the will, that the proofs taken in the cause render it abundantly certain who were the persons intended to be described by the testatrix.

The last question to be considered is, whether the residue arising from a failure of any of the dispositions contained in the will, should go to the next of kin, or to the residuary legatees.

The general rule is well settled that a residuary legatee is entitled, not only to what remains after payment of debts and legacies, but also to the residue caused by a lapsed legacy, or

an illegal or invalid disposition. (2 *Roper on Leg.* 453. *Leake* v. *Robinson, Merivale,* 39, 21. *Brown* v. *Higgs,* 4 *Vesey,* 416, 417. *King* v. *Woodhull,* 3 *Edw.* 79.) The only exception to this rule is where the words used in the will expressly show an intention on the part of the testator, to exclude such portions of his estate as are mentioned in any of the previous clauses of the will from falling into the general residue.

It was contended upon the argument that the words, " if any there shall be after paying the preceding legacies, devises and bequests," contained in the parenthesis of the residuary clause, bring this case within the exception to the general rule. A reference to the adjudged cases will show that similar words used in the residuary clause have not been considered sufficient to limit a residuary disposition to any particular or partial residue. (*Shanley* v. *Baker,* 4 *Vesey,* 732. *Roberts* v. *Cooke,* 16 *Id.* 451. *King* v. *Woodhull,* 3 *Edw. Ch. Rep.* 79.)

The conclusion to which I have come is, that the residuary legatees are sufficiently described in the will, and that they are entitled to all the property of the testatrix, which remains undisposed of by any of the previous clauses of the will.

A decree must be entered declaring the construction of the will according to the principles which I have stated. And a provision must also be made, in the decree, for the appointment of a suitable person, as trustee in the place of the Right Reverend Bishop England, deceased. The costs of all the parties, together with a reasonable counsel fee, to be certified by the taxing officer, must be paid out of the estate.