## MARTIN v. STODDARD et al.

*(City Court of Brooklyn, General Term. January 28, 1889.)*

MORTGAGES—TAXATION—SALE—NOTICE TO MORTGAGEE.
　　Under Laws N. Y. 1883, c. 114, § 4, requiring notice of the sale of land for taxes in the city of Brooklyn to be given to the owner and mortgagee of the property before a deed shall be made to the purchaser, a former owner who has been so served cannot, in ejectment by the purchaser, defend on the ground that no notice was given to a mortgagee.

Appeal from trial term.

Ejectment by Thomas Martin against Lucy E. Stoddard and Mary Mulvahill for a lot in the city of Brooklyn. The defendant Lucy E. Stoddard was seised of the land, her co-defendant being her tenant, and on March 18, 1885, Matthias W. Cole, the registrar of arrears, sold it to plaintiff for unpaid taxes, assessments, and water-rates, and conveyed it to him by deed dated April 29, 1886. A mortgage executed by a former owner of the land, dated in 1837, duly recorded, was also introduced in evidence, and was not shown to be satisfied. A notice was proved to have been given to the defendant Mrs. Stoddard, setting forth the sale and purchase by plaintiff, but none appeared to have been given to the mortgagee. There was a verdict and judgment for plaintiff, and defendants appeal. Laws N. Y. 1883, c. 114, § 4, regulating the collection of taxes, assessments, and water-rates in the city of Brooklyn, provide that the registrar of arrears shall not deliver a deed to the purchaser unless the latter presents proof of the service of notice of such sale upon the owner and mortgagee of the premises.

*A. H. & W. E. Osborn,* for appellants.　*Wm. J. Gaynor,* for respondent.

PER CURIAM. All the questions presented by the records in this case have already been passed upon by this court, except the point that the notice of sale was not served upon the mortgagee of the lands sold for taxes. Laws 1883, c. 114, § 4, requires notice of sale to be served on the owners and mortgagee of the premises. Notice was served on the defendants, who were the owners. They cannot complain that the mortgagee was not served. Judgment must be affirmed, with costs.

---

## In re ARDEN'S WILL.

*(Surrogate's Court, New York County. December 13, 1888.)*

1. CORPORATIONS—FORFEITURE—COLLATERAL PROCEEDINGS.
　　The fact that an incorporated church has forfeited its charter and lost its legal existence can be taken advantage of only by direct proceeding against it for the purpose of declaring the forfeiture, and cannot be set up in the contest of a will in which the church is a legatee.

2. RELIGIOUS SOCIETIES—INCORPORATION—CERTIFICATE—RECORDATION.
　　Where Laws N. Y. 1813, c. 60, (2 Rev. St. 7th Ed. p. 1654,) providing for the incorporation of religious bodies, is complied with, except that the certificate is recorded in the recorder's instead of the county clerk's office, the error does not vitiate the proceedings.

3. WILLS—CONSTRUCTION—RESIDUARY CLAUSE—LAPSE OF LEGACY.
　　Under a residuary clause giving generally "all the rest, residue, and remainder" of testator's estate, a void legacy will fall into the residuum.

The will of Eliza Jane Arden was presented for probate by Thomas G. Stewart, and contested by Charles F. Arden and Thomas O. Arden, heirs at law of the testatrix.

*S. F., F. H., & H. Cowdrey,* for contestants.　*Dixon, Williams & Ashley,* for the Ladies' Home Society and the First Baptist Mariners' Church of New York City, legatees.　*Morgan & Ives,* for proponent.

RANSOM, S.   That the paper propounded was duly executed as the last will and testament of decedent, and that she was mentally capable and under no restraint, nor subject to undue influence, is fully established.   There remain but two questions to be determined.   The Ladies' Home Society is admittedly incapable of taking its legacy of $500; and it is claimed in behalf of the contestants that, as to this legacy, the decedent died intestate; whereas, the residuary legatee claims that it falls into and becomes a part of the residuum. The capacity of the First Baptist Mariners' Church to take as residuary legatee is disputed, it being claimed by contestants that it is incompetent to take on four grounds: (1) That the church is not incorporated; (2) that it holds property equal to the amount it is authorized by law to hold; (3) that it is incapable of taking a· devise of real estate, or the proceeds of real estate; (4) that it is dissolved as a corporation, and has no legal existence.

The certificate of incorporation was recorded in the register's office March 25, 1847, instead of in the office of the county clerk, as required by the statute.   Laws 1813, c. 60.   The case cited by contestant is controlling on the point that, where the substantial requirements of the statute are complied with, as the holding of the meeting, the election of trustees, and the execution of the certificate, an error in recording, etc., would not prevent the corporation from taking effect as such.   Trustees v. Bly, 73 N. Y. 323.

The other point to be considered is whether this court has jurisdiction to determine that this corporation has become dissolved and has no legal existence.   In Re Railroad Co., 70 N. Y. 327, at page 338, it was held that a cause of forfeiture cannot be taken advantage of or enforced against a corporation, collaterally or incidentally, or in any other mode than by a direct proceeding for that purpose against the corporation, and the government creating the corporation can alone institute the proceeding.   "Where twenty-four persons subscribed articles of incorporation, while the statute required twenty-five, and filed the same pursuant to the statute, and exercised the powers and franchises which would have belonged to them if duly incorporated, they become, de facto, a corporation, and a defendant, in an action brought by the corporation, cannot question the validity of its incorporation. That can be done only in an action by the people, brought for the purpose of testing its right to the corporate powers and franchises which it has assumed." Railway Co. v. Railroad Co., 22 Alb. Law J. 134.   "A forfeiture of the franchises of a corporation, unless there be special provision by statute, can only be enforced by the sovereign power to which the corporation owes its life, in some proceeding instituted in behalf of the sovereignty."   Denike v. Cement Co., 80 N. Y. 599.

It is· unnecessary to cite further authorities.   Whether this legatee is or is not a corporation lawfully existing cannot be decided in this proceeding or in this court.   It appears satisfactorily that it was duly organized and incorporated, and has never been judicially dissolved.   I decide, therefore, that the First Baptist Mariners' Church is competent to take the residuary estate.

I next come to the legacy of $500 to the Ladies' Home Society.   The language of the sixth clause is as follows: "I give, devise, and bequeath to the Ladies' Home Society of the Baptist churches of the city of New York, $500;" and of the eighth clause: "All the rest, residue, and remainder of my estate, real and personal, I give, devise, and bequeath to the First Baptist Mariners' Church of the city of New York."   And by the ninth clause the executors are directed to sell and dispose of all the real estate for the purpose of distribution.   In Kerr v. Dougherty, 79 N. Y. 327, although the court of appeals held the lapsed legacies did not fall into the residue, the reasons given were based on language in the will directly contrary to that of the one in question here.   In that case there was not a general bequest of the resi·due.   The testator's wife was not a residuary legatee of all the fund, but only partially so, as the devise to her was confined to a fund after a certain amount

had been deducted, thus creating the bequest of a residue of a residue. In the case at bar there is a bequest of the residue generally; nor is the residuary legatee confined to a fund that will be ascertainable after certain amounts have been deducted therefrom, thus making the bequest that of a residue of a residue. See, also, *King* v. *Woodhull*, 8 Edw. Ch. 79–82; *King* v. *Strong*, 9 Paige, 94. In my opinion, the void legacy in question falls into and becomes a part of the residuum.

------

## *In re* LEAVITT'S ESTATE.

### *(Surrogate's Court, New York County.* January 31, 1889.)

1. DESCENT AND DISTRIBUTION—INHERITANCE TAX—NON-RESIDENT.
   Laws N. Y. 1885, c. 483, imposing the "collateral inheritance tax," applies to shares of stock in a New York corporation, the proceeds of which pass by the will of a testator resident and domiciled in another state.
2. SAME—APPRAISEMENT—VALUE OF ANNUITIES.
   Though, by the terms of the will, it may and probably will become necessary to deplete the principal of the fund to pay life annuities, and it is thus impossible to determine the present cash value of the annuities, that fact is immaterial to the appraisement of the estate for the purpose of imposing the tax, as the property should be taxed at its market value at testator's death.

On motion to confirm appraiser's report.

Edward Leavitt by his will directed his entire estate, consisting wholly of stocks in a New York corporation, to be held by his executors in trust to pay out of the income annuities of $2,000 each to Lucy A. A. Fisher and Mary U. Fisher for their respective lives. If the income should exceed $4,000 in any year the excess was to be divided among testator's nephews and nieces. Should it be less than that amount the deficiency was to be made up from the principal. The principal remaining at the death of the annuitants was to be divided among testator's brothers, sister, and nephews and nieces. The annuitants were, respectively, the widow of testator's deceased wife's brother, and her daughter.

*Geo. C. Kobbe,* for the executors.    *Latham G. Reed,* for the remainder-men. *Nathaniel Cox,* guardian *ad litem,* for the infants.

RANSOM, S.    In this matter the appraiser reports that the two annuities which are subject to tax amount to $47,581, and that the whole taxable estate amounts to $58,510.02, which, even if judiciously invested, would not produce a sufficient amount of income to pay the said annuities, and adds: "I cannot ascertain that the rents, issues, profits, and income from the estate of testator will be more than sufficient to pay the above legacies and annuities, and am therefore unable to compute the value of other contingent payments of surplus income to nephews and nieces provided for in the will. The right of and direction to the executors to impair and diminish the *corpus* of the estate, if necessary, from time to time, for the purpose of making good the annuities, and the apparent necessity for so doing for want of adequate income, renders any appraisement of the value of the contingent interests provided for in the will premature during the life-time of the annuities." Counsel for certain of the beneficiaries appear in opposition to the report, and claim that the appraiser errs in reporting any of the property subject to the tax, upon the ground that the whole estate in this state is personal property, and that, as the testator was a resident of and domiciled in the state of Connecticut, the surrogate has no jurisdiction; and it is a well-settled rule of law that personal property follows the domicile, and therefore there is nothing in this state subject to the tax. Counsel for the executors claim that it is impossible for the appraiser to fix a hard cash value on these annuities, as the executors are required to pay to each of the two annuitants $500 quarterly, and, as there is not enough income, there will be, every three months, some diminution of principal, which sum will then cease to bear interest. This is a case, say