Williams, J.
William Hutchings executed the will in question on the 24th day of November* 1893, and died in Cuyahoga county, where he had theretofore resided, on the 12th day of September, 1894. The will was admitted to probate in that county on the 22nd day of September, Í894, and the executor named therein duly qualified. The testator left neither widow nor lineal descendant, but the plaintiff in error, who had been duly adopted as his child in accordance with the laws of this state, survived him as his sole heir at law. By the will certain pecuniary legacies are given to collateral relatives of his deceased wife, and of his own, and to his adopted child, and to some other persons, which are not deemed important in arriving at a construction of the will. The following are the material provisions of the will:
“charitable purposes,
1. I give $1,000.00 one thousand dollars for a county poor house when ever built or bought. Until then, safely invest the money and give the annual proceeds to the deserving poor of Chagrin Falls, who do not regularly receive help of the town.
2. I give $1,000.00 one thousand dollars toward either the purchase or building of a Congregational *413 church parsonage in Chagrin Falls if the trustees so provide.
3. I give $500.00 five hundred dollars to the Bible Christian Conference in England for their China Mission.
My'will is also that my live stock and farming utensils of every kind be sold within six months of my death. The Enterprise mill, my interest in the business of Stoneman and Hutchins, with what of real estate is not sold of any and all kinds, shall be disposed of and business settled up if possible within (2) two years of my death. And further, the proceeds arising therefrom, with all from any and all sources due to me from mortgage, bank or bills unpaid at my death, be used in paying all before specified as my indebtedness and to my legatees, and the charities. And the balance be divided between the children living at my death of the hereinafter named brothers and sisters of my late wife and myself, viz.: Robert Hutchins, Phillip Hutchins, (2 daughters) William Down, Mary Mont joy, Grace Isaacs, my late sister Elizabeth Noakes, and Catherine Isaacs. P. S. Henry Noakes had 100 dollars deduct and properly divide with others.”
The testator having died within one year after the execution of the will, leaving an adopted child surviving him, the three charitable bequests, amounting to tAventy-five hundred dollars, were rendered void by the operation of section 5915, of the Revised Statutes, which provides that: “If any testator die leaving issue of his body, or an adopted child, living, or the legal representative of either, and the will of such testator give, devise or bequeath the estate of such testator, or any part thereof, to any benevolent, religious, educational, or charitable purpose * * * or to any person in trust for any such purposes, * * * whether such trust appears on the face of the instrument making such gift, devise, or bequest or not; such will as to such gift, devise, or bequest, *414 shall be invalid unless such will shall have been executed according to law, at least one year prior to the decease of such testator.”
The fund derived from the sources named in the provisions of the will immediately following the three charitable bequests, and out of which the testator directed them to be paid, exceeds their aggregate amount, after the payment of the testator’s debts and the satisfaction of all other charges upon the fund, leaving a balance to pass under that clause of the will to the children of the brothers and sisters of the testator and of his late wife, as therein provided. And the question involved in the construction of the will upon which the executor has sought the judgment and direction of the court, is whether the amount of the void legacies fell into the balance above mentioned, or passed as undisposed of property to the adopted child. The circuit court held the amount of those legacies became part of the balance referred to, and directed distribution thereof accordingly, upon the ground that the language disposing of that balance constitutes a residuary clause that includes all of the residuum of the testator’s estate not otherwise effectually disposed of by the will. This conclusion seems at variance with the language of the will and the apparent intention of the testator. The “balance” that is given to the so-called residuary legatees is not the general residuum of all of the testator’s estate, but only what remained of a particular fund derived from specified sources, after deducting therefrom the amount of the charitable legacies and certain other charges upon it. The gift of that balance necessarily excludes from the gift everything that the will provides shall be deducted from the fund in order to arrive at the balance. The testator, when he made his will, evidently expected the bequests to the charities to be valid, and intended the money to be applied to them as provided in the will; otherwise he would not have made such be *415 quests. That he did not expect those bequests to become void by his death within a year from the execution of the will is apparent from the fact that he made no provision for the disposition of the money in that event. And, though the bequests became ineffectual to carry the fund to the expressed objects of the testator's bounty, it seems obvious his'intention was to limit the gift under the so-called residuary clause to whatever balance should remain after they and other charges were taken out of the fund from which they were directed to be paid.
There can be no proper application of the rule that a residuary clause carries all the estate of the testator not otherwise lawfully disposed of by the will, including void and lapsed legacies, when a different intention may be fairly drawn from all the provisions of the will. We are aware a distinction has sometimes been made between the effect of a residuary clause with respect to void and lapsed devises of realty, and such bequests of personalty. In regard to the former, a rule requiring that construction which is most favorable to the heir has been applied, and in the latter, one which is most favorable to the residuary legatee. The reason of this distinction is stated by Sir John Leach, Master of the Rolls, in Jones v. Mitchell, 1 Sim & Stuart, 290, 295, to be, “that the will as to the personal estate speaks at the time of the death of the testator, and the residuary legatee takes not only what is undisposed of by the expressions of the will, but what becomes undisposed of at the death by disappointment of the intention of the will,” while, as to real estate, “the will speaks only at the time of making it,” and the residuary legatee can take “nothing but what at that time was intended for him.” This is not a very satisfactory reason, since, in all cases, the intention of the testator must control, and that is to be ascertained in the light of his situation at the time of the execution of the will, and from a consideration of all of its *416 provisions. It is more probable, as stated in Perry v. Barber, 1 Hill’s Ch., 95, that the distinction grew out of the English law under which personal property not disposed of by the will went to the executor, though not of kin to the testator, and to avoid that result the courts went “very far to favor the residuary legatee, and often strained a point, to include such property in the residuum under the will; but, as undisposed of realty went to the heir the courts applied a more reasonable rule in upholding his rights, and gave him the property included in devises that failed, unless an intention to make a different disposition was shown by the will.” Some American courts have followed the English decisions. Greene v. Dennis, 6 Conn., 292; VanKleek v. Church, 20 Wend., 471; Riker v. Cornwell, 113 N. Y., 115. The reason for the discrimination in favor of residuary legatees in cases of void legacies, has never existed in this state, where the next of kin takes under the law, both real and personal property of which no disposition is made by will. The courts which maintain that discrimination, however, hold the rule to be applicable only where there is a general residuary clause in the will embracing all of the otherwise undisposed of property of the testator. In every case that has been brought to our attention, where that rule has been applied, the will involved contained a residuary clause of that character. In King v. Woodhull, 3 Edw. Ch. 79, 82, it laid down that, “to entitle a residuary legatee to the benefit of a lapsed or void bequest he must be a legatee of the residue generally, and not partially so; for, where it is manifest from the express words of the will that a gift of the residue is confined to the residue of a particular fund or description of property, or to some certain residuum, he will be restricted to what is thus particularly given, since the legatee cannot take more than is fairly within the scope of the gift.” In Kerr v. *417 Dougherty, 79 N. Y., 329, it was held that: “The general rule that in a will of personal property a general residuary clause carries whatever is not otherwise legally disposed of, does not apply to a residuary clause limited by its terms to what remains after payment of specific legacies; in such case if any of the legacies are void there is another residuum which is undisposed of.” The authorities are largely reviewed in that case; and its principle has been approved in the later decisions in that state. The same doctrine is maintained in Peay v. Barber, 1 Hill’s Ch., 95, where there is also a general discussion of the subject, find of the cases bearing upon it. This principle is also declared in Bane v. Wick, 19 Ohio 328, where it was held that: “If the language of the testator, in a residuary clause of his will, will admit of a limited application, as well as one of a more general character, a court of equity will give it that construction which will be most favorable to the heir at law.” 'The residuary clause in that will is not much dissimilar to that in the one before us. There the testator, after making certain devises and bequests, directed that his executors should retain in their possession, all of his bank and canal stock, and the lands and town property the use of which was given to his wife, or as much as should be sufficient to pay all his debts, legacies, and. donations,” and the “balance” to be equally divided among his chidren then living.” A daughter of the testator to whom certain real property was devised by tbe will, died before the testator, and her children brought the suit, claiming as to that, and other property, the testator died intestate, and that they inherited, in right of their mother, as heirs of the testator, their share of the intestate property. The living children of the testator claimed under the residuary clause of the will. The court held that the words “the balance,” in the residuary clause, should be so limited “as to *418 reach nothing more than the particular fund with which they stood in immediate connection, namely, the bank and canal stock, and the lands and town property, the use of which had been given to the wife of the testator.” And, that fund, “after being charged with all the debts, legacies, and donations,” yielded “the only ‘balance’ to be distributed” to the residuary legatees.
The residuary clause in the will in question here does not purport to dispose of the general residuum of the testator’s property, but is, in terms, limited to the disposition of “the balance” of a particular fund derived from certain specified sources; and that “balance” is only what is left after taking from the fund the amount of the charitable bequests, though from the happening of an unexpected event, they became void. The requirement that the amount of those bequests shall be taken from the fund in order to arrive at the balance that shall pass under this clause to. the persons named, clearly evinces an intention of the testator that no part of that amount shall go to them. What disposition the testator would have made of the amount if he had anticipated the charitable legacies might have failed, is left to mere conjecture; and the presumption that he did not intend to die intestate as to any property to which his attention was directed, does not authorize the court to dispose of it as may be supposed the testator would have done. “In the construction of wills, conjecture is not permitted to supply what the testator has failed to indicate; for, as the law has provided a definite successor, in the absence of disposition, it would be unjust to allow the right of this ascertained object to be superseded by the claim of any one not pointed out by the testator, with equal distinctness.” 1 Jar-man on Wills * 326.
If it be a presumption that the testator knew of the provision of the statute already quoted which avoids bequests and devises of the *419 character therein mentioned on the happening of the specified event, it may be inferred that he intended the amount of such bequests in his will to go to his heir, if they became ineffectual, with as much certainty, at least, as that he intended it should pass under the gift of the balance of the designated fund, after deducting the amount therefrom. .The statute evidently was enacted for the special protection of the children or adopted child of the testator, and their representatives, in the cases provided for, though, as held in Patton v. Patton, 39 Ohio St., 596, it inures also to the benefit of the collateral heir when the lineal heir survives the testator and then dies.
We think the fund in question should be awarded to the plaintiff in error.

Judgment reversed and judgment for plaintiff in error.