Lawrence, J.
This action is brought to obtain a construction of the will and codicil of MaryHopeton Drake, late of th.e city of New York, deceased,— the plaintiff being the executor named in said will and codicil; and the defendants, various charitable institutions in the city of New York and persons-who are legatees thereunder.
By the second clause of the will the testatrix, exercising a power of appointment given to her by the last will and testament of James Drake, deceased, devised certain houses and lots to grandchildren of the sisters of the said James-Drake, and also a certain other house and lotto the daughters and sons of the sisters of the said James Drake, Mrs. Lawrence, and Mrs. Drake.
By the third clause of her will she directs her executor to sell certain houses- and lots therein named, and out of the proceeds to pay to one Evans the sum of $37,000 in full payment of her bond held by him, conditioned for the payment of a monthly amount during his life, and to cancel the same; and, in case said Evans refused to accept such payment, the whole of the proceeds arising from the sale of said houses are to be given by the executor to the United States Trust Company, in trust, to invest and keep the same invested, etc., and out of the interest therefrom to pay said Evans the monthly sums called for by said bond, and to apply the residue to his use during his natural life; and upon his death she directs that the principal be given to his then lawful issue, and, if he shall die leaving none, “the principal of said trust fund shall form a part of my residuary estate, and be disposed of as the same is-hereinafter disposed of.”
The fourth clause devises a house and lot for the benefit of Mary E. Bed-ford andjier family.
The fifth gives control of the bed in St. Luke’s Hospital, then owned by the testatrix, to Mary Hopeton Smith, a grandniece of her father, etc.
The sixth gives her laces, shawls, jewelry, etc., to Mary Hopeton Drake and Mary Hopeton Smith, granddaughters of her father’s sisters.
The seventh clause directs that all the rest, residue, and remainder of her estate, both real and personal, be sold by her executor, and converted into cash, and that the proceeds be paid over to the persons and parties therein named. Then follow the names of several charitable institutions and individuals who-are specified as legatees.. By said seventh clause the testatrix gives to St. Luke’s Hospital the sum of $5,000, to endow a bed to be called "the “Hopeton Bed,” and she gives the right of disposing of the same to MaryHopeton Drake. To Sarah A. Lawrence, sister of her deceased father, she bequeaths the sum of $10,000. She also bequeaths to the Theological Seminary in Alexandria, state of Virginia, the sum of $10,000, to be invested by said corporation, and the income applied forever thereafter to the education of two poor young men, one for the foreign, and the other for the domestic, missionary field. There are also legacies to Mrs. Clary, Miss Whittemore, Mr. Wetmore; to Henry Bradley, her coachman, if in her service at the time of her death; of her pew in Fifth Avenue Presbyterian Church to Emily L. Smith; of $10,000 to Mrs. Wright; and one of $5,000 intrust to the United States Trust Company for the benefit of Mrs. Caroline M. Smith and her daughters; another, in a like sum, to said trust company, for the benefit of Mrs. Foster and her daughters; and another, in a like sum, for the benefit of Mrs. Bonsall and her daughters! Then follows a bequest to the said trust 'company of the sum of $2,000, the interest of which is to be paid over to Mary McDermott during her life, and the principal, upon her death, to James Drake Black, Mary Hopeton Drake, and Mary Hopeton Smith. The testatrix further directs in said seventh clause her executor to pay to said trust company the sum of $5,000, to be invested and kept invested in such securities as they may deem safe, to receive the interest and income *181 thereof, and to pay over the same to Mrs. Behin during her natural life; the principal, upon her death, to “fall into and be disposed of as a part of my residuary estate. ” A like sum is also to be invested by said trust company for the benefit of Mrs. Hancock; and the will contains the same direction that it shall fall into and be disposed of as part of the residuary estate. Then follow further bequests to and for the benefit of Mary, Matilda, and Fanny Bedford, and Martha Herbert, and the clause concludes with bequests of $5,000 to the Reverend John McXabb, and of $1,000 each to the grandchildren of Mrs. Lawrence and Mrs. Drake.
In the eighth clause it is provided that, “after the payment of the above-mentioned legacies, and the provisions made as above directed for the annuities, I order and direct my said executor to pay over, out of the residue of the proceeds of the sale of my residuary estate, the following leg’acies, which T give to the following persons and incorporations, viz. ” Then follow 15 bequests to charitable and religious societies or incorporations, and a bequest of .$5,000 to Benjamin C. Wetmore, to be by him applied to such charitable uses as he may see fit. The will then continues: “All the rest and residue of my said residuary estate, not herein otherwise disposed of, I order and direct my .said executor to pay over and I give and bequeath the same to the above mentioned James Drake Black, Mary Hopeton Drake, and Mary Hopeton Smith, absolutely, share and share alike. ” Provision is also made for the disposition of the shares of the said residuary legatees, in case either of them shall •die before the testatrix, with or without issue.
Subsequently the testatrix executed a codicil to said will, in and by which •she revoked certain devises contained in the second clause of her will to James Drake Black, Mary Hopeton Smith, and Mary Hopeton Drake, and, by the .second clause of said codicil, she readjusted the devises of said property so as to make Hopeton Drake Atterbury, a grandchild of Mrs. Lawrence, who had been born subsequent to the execution of the will, an equal beneficiary with James Drake Black, Mary Hopeton Smith, and Mary Hopeton Drake. By the third clause of said codicil she revoked the bequest of her personal effects contained in the sixth clause of the will, and instead thereof gave and bequeathed the articles therein mentioned to Mary Hopeton Drake, Mary Hopeton Smith, •and Hopeton Drake Atterbury, equally, share and share alike. By the fourth •clause of said codicil she gave and bequeathed to St. Luke’s Hospital the sum ■of $5,000, to endow a bed to be called the “Hopeton Bed,” and gave and bequeathed the right of disposing the same to Hopeton Drake Atterbury. She also directed, by said clause, that the sum of $2,000, directed in the seventh •clause of the will to be invested for the benefit of Mary MeDerfnott, should, ■upon the death of said McDermott, be paid over to James Drake Black, Mary Hopeton Drake,Mary Hopeton Smith, and Hopeton Drake Atterbury, in equal shares, etc. She revoked by the fourth (should be the fifth) clause of said •codicil the bequests in the eighth clause of her will, “of all the rest and residue of my said residuary estate, not herein otherwise disposed of, to James Drake Black, Mary Hopeton Drake, and Mary Hopeton Smith,” and instead thereof she directed her executor to pay over, and gave and bequeathed, the ¡said “rest and residue of my said residuary estate to said James Drake Black, Mary Hopeton Drake, Mary Hopeton Smith, and Hopeton Drake Atterbury, share and share alike, absolutely and forever;” the same provisions and bequests over to apply to each of the said four legatees in the event of the death ■of either of them.
The complaint alleges that various difficult and important questions, relating to the powers and duties of the plaintiff under the said will and codicil, ■and the construction of certain bequests, provisions, and directions therein ■contained, have arisen, with regard to which the plaintiff desires the direction and judgment of the court. It is further alleged that as to the bequest contained in the eighth division of said will, to the Xew York BlindAsylum, the *182 plaintiff has no knowledge of the existence of any body under that name, but that the same is claimed by the defendant the Society for the Relief of the Destitute Blind of the City of New York and Vicinity, having its home at Tenth avenue and One Hundred and Fourth street, in said city, and is also-claimed by the New York Institution for the Blind, having a school or college at Ninth avenue and Thirty-Third street, in said city. It is further averred that the estate of the testatrix is insufficient to pay in full the various legacies given in and by the eighth division of said will, and that said legacies will have to abate, but to what extent the plaintiff cannot yet determine; that Sarah A. Lawrence, to whom was bequeathed the sum of $10,000, died before the testatrix, and the said legacy to her thereby lapsed; that the question has arisen whether such lapsed legacy, under the true construction of said will and codicil, goes to the infant defendants Black, Drake,' Smith, and Atterbury, the residuary legatees, in equal shares, or whether such lapsed legacy goes to-make up, pro rata, the deficiency on all the bequests other than the last said residuary bequest contained in division 8 of said will, as modified by the next, to the last division of said codicil. It is averred that the legacy to Henry Bradley has also lapsed, because he was not in the service of the testatrix at. the time of her death, and that a similar question arises as to the disposition-of the money given by said legacy as with reference to the- lapsed legacy of' Mrs. Lawrence. The complaint further avers that a similar question also-arises as to the disposition to be made, on the respective deaths of Mrs. Beilin and Mrs. Hancock, of the two trust funds directed by the seventh division off said will to be invested for their benefit during their respective lives. It is-also averred that the plaintiff has no knowledge of the existence of any body corporate or association under the name of the Ladies’ Home Society of the “Baptist Church in the City of New York,” and that no claim has been made-therefor, and that the question arises whether the plaintiff is justified in treating such legacies as void. Inasmuch as, upon the trial of the action, the society appeared, and was permitted to intervene and answer, no questions can arise with respect to that legacy differing from those which relate to the other-societies.
It is also averred that, as to the bequest of $5,000, in the fourth division of the codicil, to St. Luke’s Hospital, the question arises whether said bequest,, like the legacies contained in the seventh division of said will, is to be paid in full, or whether said bequest is to be paid pro i ata with the legacies contained, in the eighth division. It is averred, with respect to the sum of $10,000 directed to be paid over to the United States Trust Company, to be held in trust and invested, and tiie income paid to the defendant Annie E. Foster during her natural life, and the principal to be divided upon her death between her two-daughters, that all the parties are of full age, and have united in a request, that said sum be paid over to said three defendants upon their joint receipt,, and the judgment of the court is asked wh.-ther the plaintiff would be justified in doing so, and also, in case such payment should bemiade, what interest, if any, upon said sum, should be paid. The court is finally asked by its-judgment to determine and decide the several questions referred to in the complaint, as well as any other questions which may be raised touching the construction of the said will and codicil.
The general claim is made, on behalf of the charitable societies named its the eighth paragraph of the will, that it is clear that the ultimate residue intended by the testator to go to the infant defendants Black, Drake, Smith,, and Atterbury, includes only such sums as should remain after paying the prior legacies, and therefore that, as between the societies and the ultimate residuary legatees, both under the will and codicils, the societies must first be' paid in full. On the other hand, it is claimed, on the part of said residuary legatees, that, when the testatrix in paragraph 3 of her will mentions her residuary estate, she clearly refers to the general residuary clause of her will,, *183 and also when, in paragraph 7, she directs that certain trust funds shall each, after the death of the respective beneficiaries, become a part of her residuary estate, she refers again to this general residuary clause; also that the charitable legacies are to be paid only out of the residue of the proceeds of sale of “my residuary estate,” directed to be sold in the seventh paragraph of the will after the legacies mentioned in said paragraph are paid; that such residue is a limited, and not a general, residue; and that the legatees to be paid out of it cannot enlarge their fund by lapsed legacies. It is further argued, upon the part of said infants, that the fact that such residue is the proceeds of sale of the entire remainder of her estate, after previous devises and bequests have been paid, does not give to this clause the full force of a general residuary clause, “in a case like, this, where there is also a broader and general residuary clause, especially when this broad and general residuary clause is referred to in paragraphs three and seven of the will preceding it;” that there cannot be “two effective, unlike, general residuary clauses;” that the will should be construed to harmonize and give effect to both clauses; and that a construction which permits the charitable legacies to gather in lapsed legacies would in effect be an obliteration of the general residuary clause.
There is no doubt that the legacy to Mrs. Lawrence lapsed by reason of her death before the testatrix, and that that to Henry Bradley never took effect, for the reason that he was not in the service of the testatrix at the time of her decease. In In re Benson, 96 N. Y. 509, the court, in referring to such legacies, said; “The rule is universal, to which there is no exception to be found in any of the books, that lapsed legacies under such a residuary clause as this fall into the residue, and pass to the residuary legatees. ” In that case the will contained a general residuary clause disposing of all the rest, residue, and remainder of the testator’s estate, both real and personal. Four-fifths thereof were given to the beneficiaries named. One-fifth was given in trust for the benefit of his wife during her life. It was held that the two lapsed legacies did not pass as undisposed of to the next of kin, but fell into the residue, and that one-fifth thereof should be added to that portion of the residuary estate to be held for the benefit of the widow. Earl, J., in his opinion says: “In Roper on Legacies, 496, it is said that when ‘ the lapse is of a general or specific legacy, or of an annuity, it falls into the general residue, and consequently belongs to the people entitled to that fund by the gift of the testator.’ In 2 Williams on Executors, 1044, it is said that when the residuary legatee is nominated, generally, he is entitled in that character to whatever may fall into the residue, after the making of the will, by lapse, invalid disposition, or other accident. In 2 Redfield on Wills, 442, it is said that ‘ it seems to be well settled that a residuary bequest as to personal estate carries, not only everything not attempted to be disposed of, but everything which turns out not to have been effectually disposed of, as void legacies and lapsed legacies.’ A presumption arises in favor of the residuary legatee as to personalty, against any other person except the particular legatee. The testator is supposed to give it away from the residuary legatee only for the sake of the particular legatee.” In Reynolds v. Kortright, 18 Beav. 417, 427, the learned judge writing the opinion said: ‘ The result is that everything which is ill given falls into the residue.’ To the same effect are the following authorities in this state: James v. James, 4 Paige, 115; King v. Strong, 9 Paige, 94; King v. Woodhull, 3 Edw. Ch. 79; Banks v. Phelan, 4 Barb. 80. But the testator may, by the terms of the bequest, narrow the title of'the residuary legatees, as where it appears to be his intention that the residuary legatees shall have only what remains after the payment of legacies; and he may so circumscribe and confine the residue as that the residuary legatee will be a specific legatee, and then he will not be entitled to any benefit accruing from lapses, unless what shall have lapsed constitute a part of the particular residue. But as said by Lord Eldon in Bland v. Lamb, 2 Jac. & W. 406: ‘Very *184 special words are required to take a bequest of the residue out of the general rule.’ In Banks v. Phelan a learned judge said that the only exception to the general rule is when the words used in the will expressly show an intention on the part of the testator to exclude such portions. of his estate as are mentioned in any of the previous clauses of the will from falling into the general residue. ”
I have quoted thus largely from the elaborate opinion of Judge Earl in that case, because it seems to me to contain, in a succinct form, all the rules which appertain to the construction of the will under consideration, and to epitomize the law, as derived not only from the authorities quoted by the learned judge, but numerous other authorities which have been referred to by the learned counsel herein in their exceedingly instructive briefs. Guided by the principles stated in the opinion of the court of appeals in In re Benson, just •referred to, I have come to the conclusion that the counsel for the infant defendants, the residuary legatees, are right in their contention that the legacies specifically given by the seventh clause or division of the will which have lapsed, or which are to fall into the residuary estate of the testatrix upon the expiration of the lives of the immediate beneficiaries,—such as the legacies to Mrs. Behin and Mrs. Hancock, and the bequest of Evans in the event of his not accepting the principal sum therein mentioned in payment of the bond held by him,—go to and become a part of the residuary estate mentioned at the end of the eighth division of the will, at folio 45 of the complaint. In construing this will, as in all other cases, we must endeavor to discover the intention of the testatrix. It is plain to me that her intention was that the charitable societies mentioned in the eighth division of the will should receive nothing until after the payment of the specific legacies mentioned in the seventh division of the will. The fund from which each of the legacies and bequests referred to in both of those divisions of the will was to be derived was the proceeds of the sale of all the rest, residue, and remainder of the testatrix’s estate, both real and personal, not specified or referred to in the preceding divisions of the will. When, therefore, under the seventh division of the will, the testatrix sets apart from those proceeds certain bequests or legacies, and provides by the eighth division of the will “that, after the payment of the above-mentioned legacies, and the provisions made, as above directed, for the annuities,” the executor is to pay out of the residue of such proceeds the various legacies therein enumerated, it is plain to my mind that she could not have intended that any of such legacies or bequests should be paid out of any portion of such proceeds which had been previously disposed of by the seventh division of the will. If, therefore, for any reason, any part of the proceeds bequeathed by said seventh division of the will did not, in fact, go to the legatee or legatees therein named, it fell into and became a part of the general residuary estate, as contradistinguished from the residuary estate arising from such proceeds not referred to, or attempted to be disposed of, by the seventh division of the will. I am strengthened in this view, as already intimated, by the provision in regard to the ultimate disposition to be made of the funds directed to be invested by the United States Trust Company for the benefit of Mrs. Behin and Mrs. Hancock. The interest of each of those funds is, by the will, directed to be paid over to the respective beneficiaries during their respective lives, and, upon the death of each of said beneficiaries, the testatrix has directed that the said trust fund shall fall into and be disposed of as part of her residuary estate. It can hardly be supposed that the testatrix contemplated that in case of a deficiency in her estate, and an inability to pay the legacies mentioned in the eighth division of the will in full, that the principal of said two trust funds should go, after the decease of the beneficiaries, to the legatees therein mentioned. Those beneficiaries may live for years, and it seems unreasonable, therefore, to hold that the testatrix intended in any event that such portion of her estate as might, under the pro *185 visions of her will, go to the societies, should await the expiration of two life-interests in said fund. It may be urged that the testatrix, not having contemplated that a deficiency would exist, did not consider this question, and that, therefore, those bequests, and the language thereof, do not aid us in the construction of said will; but, on the other hand, we must bear in mind that the court is to endeavor to get at the true construction of the will, and at the intent of the testatrix, by placing itself in the position in which she stood, and from the language which she has employed. Bearing in mind this principle, I am entirely satisfied that the “residuary estate” to which the testatrix referred in the bequest above mentioned, in the seventh division of her will, is the “general residuary estate” mentioned at the end of the eighth division of her will, at folio 45 of the complaint. See In re Benson, 96 N. Y. 509, 510; Given v. Hilton, 95 U. S. 591, 599; Theob. Wills, (3d Ed.) 180; In re Denton, 102 N. Y. 200, 203, 6 N. E. Rep. 299.
By what has been above said I do not intend to deny that where the testator has, by the terms of the bequest, narrowed the title of the residuary legatee so that it appears to be his intention that the residuary legatee shall have only what remains after the payment of the legacies, the general residuary legatee takes nothing until after such payment; but such does not seem to be the effect of the language employed in this case. The language of the general residuary clause, at folio 45 of the complaint, is: “ All the rest and residue of my said residuary estate, not herein otherwise disposed of, I order and direct, ” etc. At the time of the execution of the will, the testatrix supposed that she had disposed of the legacies to Mrs. Lawrence and Bradley, and of .all other legacies which may, as the result of this litigation, be determined to have lapsed or to be of no effect. It turns out that as to such legacies she has made no disposition of her property. Those legacies are clearly not a part ■of the fund referred to at the commencement of the eighth division of the w'ill. That division provides that, “ after the payment of the above-mentioned legacies,” etc., “I order and direct my said executor,” out of the residue “of ■the proceeds of sale of my residuary estate, to pay the following legacies,” and then specifies the legatees. This was circumscribing and confirming .all those legacies to the residue of the residuary estate which remained after the legacies given, or intended to be given, by the seventh division of the will," had been carved out or taken from that estate. In 1 Jarm. Wills, (Big•elow’s 5th Amer. Ed.,) 763, the general rule is stated as it is laid down in In re Benson, 96 N. Y. 510. The author then proceeds to state an exception to that rule as follows: “However, if the words of the will show that the testator intended a residuary bequest to have a limited effect, the presumption in favor of the residuary legatee will, of course, be effectually rebutted; the ■ difficulty in these, as in most other, cases being, not in discovering the principle, but in applying it to particular wills.” I am of opinion that the learned •counsel who appears for one of the residuary legatees is right when he states ■that this case illustrates both the general rule and the exceptional case referred to by Jarman. The bequests given to the charitable societies at folio 41 of •-the complaint, and also the bequest to the residuary legatees at folio 45 of ¡said complaint, are both in form residuary bequests. But as the rule is that it is only an unqualified, absolute, general residuary clause which will take in lapsed, void, and ineffectual legacies, and as the first residuary clause seems ■only intended to have a limited effect, to-wit, after the payment of all the legacies mentioned in the seventh division of the will, whether lapsed or otherwise, it seems clear that that clause does not embrace such lapsed or ineffectual legacies. See In re Benson, 96 N. Y. 510, and authorities cited. The authorities cited by the learned counsel for the various charitable societies, who claim that the lapsed and ineffectual legacies should go into and form a portion of the fund out of which the bequests contained in the eighth division of the will should be paid, were all cases, I think, in which the general residu *186 ary clauses of the will were circumscribed and confined, so that the general principle in reference to lapsed and void legacies falling into the residuary estate, did not apply. I think it quite clear that in this case it is the residuary bequest at folio 41 of the complaint which is limited, and not the bequest at folio 45. If I am right in this construction, it follows that the lapsed, void, and ineffectual legacies or bequests contained in the seventh division of the-will fall into and form a part of the general residue mentioned at folio 45 of the complaint, and not of the limited particular residuary estate mentioned at folio 41 of said complaint. It therefore follows that such portions of the legacies intended for Mrs. Lawrence and Henry Bradley, as may remain after-the abatement to which they are subject, in consequence of the deficiency in the estate, will fall into and become a part of the general residuary estate, bequeathed by the will and codicil to the four infant defendants. I think, too, that, upon the decease of Mrs. Behin and Mrs. Hancock, the legacies given to-' them, respectively, go to said infants as a part of the general residuary estate of the testatrix. The case of Kerr v. Dougherty, 79 N. Y. 327, which was so-much relied upon by counsel in this case, is not adverse to this conclusion.- In referring to that case, the court of appeals in In re Benson, supra, say: “But that case was misconceived.” It was there held that there was no “general residuary clause; that the testator there meant to limit and circumscribe the-residuary clause, and used such language as to show that it could not be increased by the lapsed legacies. The general rule, as we have laid it down, was recognized in the prevailing opinion, but it was held that the language-of the will then under consideration and the facts took that case out of the-rule.”
It is contended, on the part of the infant defendants and of some of the others, that the bequest contained in the eighth division of the will to tlie Hew York Blind Asylum is void, because that name does not accurately describe-either of the two institutions which claim the legacy, and that the court has-nothing before it from -which if can determine that the testatrix meant either one of said institutions. It was held in Lefevre v. Lefevre, 59 N. Y. 434, that a misnomer or misdescription of a legatee or devisee, whether a natural person or corporation, will not invalidate the provision, if, either from the will' itself or evidence aliunde, the object of the testator’s bounty can be ascertained; and that to identify a particular corporation as the one intended, where - a name other than the corporate name is used, the identity may be proved by parol evidence. The defendants who claim the legacy under this will are the-Hew York Institution for the Blind and the Society for the Relief of the Destitute Blind of the City of Hew York and Its Vicinity. It was further held in the case of St. Luke's Home v. Association, 52 N. Y. 191, that “where a-devise or bequest is made to a corporation, and there are two corporations, neither of which can claim under the precise name used by the testator, it is-for the court to determine which of the two is best or most nearly described-by the name, or which will best or most closely answer the delineation used by the testator; and if, with a knowledge of the names and generalcharaeter and purposes of the two corporations as disclosed by their characters, there is-no latent ambiguity, and the court can thus determine which of the two was-intended, there can be no resort to other evidence to aid the interpretation.’”
Prior to these decisions the court of appeals had held in the case of Institution v. How's Ex'rs, 10 N. Y. 84, that the plaintiff (who is one of the defendants here) was sufficiently described under the name of the “Trustees of the Institution for the Maintenance and Instruction of the Indigent Blind in the City of Hew York” to entitle it to a legacy under the will of the defendant’s testator. The court there stated, in substance, that, although the plaintiffs were not correctly named in the will, it appearing that there was no other institution for the blind in the city of Hew York, although the plaintiffs were chartered for the purpose of instructing blind children, without regard *187 to their indigence, and without provision for their maintenance, as the state-had for several years placed certain indigent blind persons in that institution, to be maintained and instructed at the expense of the state, they were suffi-ciently described to entitle them to the legacy. In this case it appears that there is now, and was at the time of the death of the testatrix, another society in existence which is one of the claimants for the legacy in question, whose corporate title is the “Society for the Belief of the Destitute Blind in the City of Hew York and Vicinity.” It is claimed by the latter that it has-proved by its certificate of incorporation, its annual report, and by the testimony of witnesses that it is in every sense an asylum, and purely an asylum, while the co-defendant the Institution for the Blind is a school, and in no sense an asylum, and that the legacy in question in terms describes the society, and not the institution. The latter shows by the testimony that it was-incorporated over 50 years ago, and has for a long time occupied a conspicu-ous building, upon a large piece of land, during that time; whereas, the society was only incorporated in 1869, and until recently it occupied a four or" five story brown dwelling-house, the same as others in the block, which has-a sign bearing the words “Home for the Blind.” The proof, I think, establishes that the older institution was well and generally known to persons residing in the city of Hew York as the “Blind Asylum.” Witnesses were also called to show that the society has been spoken of in common parlance as the “Blind Asylum.” It is contended by the society that as before 1869 there was-only one possible beneficiary, that all bequests for the blind were naturally received by the institution. But it is contended that, as since 1869 there has-been a real society for the indigent and destitute blind, since then, for the first time, Hew York has had a blind asylum; the institution being merely a school. Mrs. Benjamin, the wife of the founder of the society, was called as-a witness, and testified that she had mailed reports to the testatrix showing the working of the society, and had also mailed tickets to her for annual fairs ;- and it is claimed, as a fair inference, that the testatrix intended the defendant society when she made the bequest to the Hew York Blind Asylum. Evidence was also given tending to show that the society was founded by the-Episcopalians, and that the testatrix was an Episcopalian; that when consulting the witness Wright as to the disposition of her property by will, as she-ran along the schedule of charities, she said, “I must leave something to the blind;” that she was particularly interested in the poor blind, and that she-said, “It is bad enough to be blind, but it is too bad to be poor and blind.” The society, therefore, claims that it is entitled to the legacy—First, because' it is an asylum, and the other claimant is not an asylum; second, because.the attention of the testatrix was called to the defendant by the annual report and tickets to its fair about the time she made her will; third, because she expressed her intention of aiding the poor blind, which is the sole object of the-defendant society. They also claim that there is not a word of extrinsic evidence in aid of the New York Institution for the Blind, and that the latter' simply proves that it is a common error to speak of the school as a blind asy-lnm. The word “asylum,” it will be perceived, is not a part of the name of either of the institutions which claim this legacy. The Hew Yorklnstitutionfor the Blind was incorporated by chapter 214 of the Laws of 1831, and it was-declared to be a body politic and corporate under that name, for the purpose of instructing children who have been born blind, or who may have become blind by disease or accident. In the Laws of 1834, p. 581, it was provided that the managers should receive from each senate district, four indigent blind persons, in like manner, and at the like expense to the state, as provided by law for the indigent deaf and dumb. In 1836 a similar provision was made, and it was directed that the beneficiaries should be between the ages of 8 and 25 years. An appropriation of $12,000 was made by said act from the state treasury, on condition that the managers of the institution should raise an *188 additional sum oí $8,000. Further acts of the legislature were passed in 1839 and in 1845, appropriating moneys from the state treasury for the support and •objects of the institution. The original act of incorporation was amended in 1848 by chapter 193 of the Laws thereof, as follows, by inserting i n the first section of said act, after the words, “by disease or accident,” the following words, viz.: “Andalso for the purpose of affording an asylum and employment for •other blind persons.” It will thus be seen that after the year 1848, the New York Institution for the Blind, by legislative designation, became an asylum, -so that one of the objects of that institution answered to the name by which the institution is shown to have been generally known inthecity of New York. It is stated in the testimony and in the brief of counsel that the Society for the Belief of the Destitute Blind of the City of New York and Its Vicinity was incorporated in 1869. We have, therefore, in this case, two institutions which it may be admitted are designated in common parlance as “blind asylums,” but the older and more widely known defendant is, by the act amending its in•corporation, described as an asylum. Furthermore, the name of the society apparently restricts relief to the indigent blind, while, on the other hand, the words, “The New York Institution for the Blind,” are of a very general ■character, and embrace all blind who may need the assistance or relief afforded by the institution, particularly in the absence of evidence of an institution having the precise name used by her. See St. Luke’s Home v. Association, 52 N. Y. 196. I think, too, that the evidence shows that the Society for the Belief of the Destitute Blind was but little known to the public at large at the time of the execution of the will; nor do I regard the evidence that the annual report •of the society and tickets for its fairs had been mailed to the testatrix by its .officers as sufficient to overcome the presumption arising from the evidence that the older institution is described in its amended act of incorporation, as well as in common parlance, as an “asylum,” that the testatrix intended that the institution should be the recipient of her bounty. I do not understand the testimony of Mrs. Wright to be to the effect that the testatrix, when consulting with her, pointed out the society upon the list or schedule. She was ■only speaking of the blind and the poor blind. Nor do I see anything in the evidence which tends to show that the inmates of either institution were more ;poor or indigent in their character in the one than in th^other. The fact ;that the testatrix was an Episcopalian does not seem to have had controlling weight with her in making her will, inasmuch as she left specific legacies to .a Methodist and Presbyterian and a Baptist society, and to several other charitable institutions not connected with any particular church. I am therefore of the opinion that the New York Institution forthe Blind is entitled to •the legacy of $5,000 mentioned in the eighth division of the will.
Upon the trial, I admitted certain evidence, subject to objection, in respect to other bequests contained in other wills, under which payments had been made to the New York Institution for the Blind. I am of the opinion that that evidence should not be received, and it is accordingly stricken out and •disregarded by me in the decision of this case.
The observations above made dispose of the two principal questions pre.sented by this case, but some others remain to be considered. It is contended that the legacy given to Mr. Wetmore, under the eighth clause of the will, to be by him applied to such charitable uses as he may see fit, is void, because there are no beneficiaries named, and because the trust is too vague to be •capable of execution by a court of equity. 1 agree with the learned counsel for the defendant the Domestic Foreign Missionary Society that it is plain ■that that legacy was given in trust, and that the legatee was to take no bene.fieial interest thereunder. This seems to be plain, not only from the terms of '.the bequest itself, but from the fact that he had received a personal bequest •of $5,000 under the seventh clause of the will, in addition to his commissions, .and from the fact that the terms of this bequest are mandatory. The cases *189 of Prichard v. Thompson, 95 N. Y. 76, and Beekman v. Bonsor, 23 N. Y. 298, and other cases in the court o£ appeals, seem conclusive upon this point.
With regard to the second bequest, given by the fourth clause of the codicil, I deem it sufficient to say that I see no reason why it should be entitled to-any preference over the legacies given in the eighth division of the will. In reference to the claim of the defendant Foster, that the trust fund should be-paid to them on their joint receipt, it is only necessary to observe that I do not consider it within my power to grant their request. The testimony taken-subject to objection at pages 9,10, 14, 15, 45, and 47 is stricken out and disregarded, and the proper exception allowed to the objecting party.
A decree will be entered in accordance with these views, and the findings-settled upon notice.