(23 Misc. Rep. 388.)

### In re BOTSFORD et al.

#### (Surrogate's Court, Chenango County. April, 1898.)

1. CHARITIES—INDEFINITENESS.
    A bequest to the supervisor of a town, and his successors in office, in trust, the income to be used in the support of poor widows and orphans as he may deem proper, is void for indefiniteness.

2. WILLS—LAPSED LEGACY.
    A testator attempted to distribute a specified fund among certain beneficiaries, giving to each a fixed amount, which in aggregate exceeded the fund. *Held* that, one of the bequests being void, such share went to make up the deficiency in the others, and only what was left of it fell into the residuum.

Proceeding for an accounting by Marcus D. Botsford and Joshua Pratt, as surviving executors of the will of Devillo White, deceased, respecting the disposition of a trust fund. Decree distributing the fund.

D. L. Atkyns (Howard D. Newton, of counsel), for executors.
Charles A. Fuller, in pro. per.
Stephen Holden, for George L. Sholes.
Henry A. Davis, for Utica Orphan Asylum.

GLADDING, S. This is a proceeding for an accounting by the surviving executors of the will of Devillo White, deceased, respecting only a fund of $40,000 mentioned in the fifth clause of his will. Devillo White died at Sherburne, in this county, on the 10th day of May, 1882, leaving a holographic last will and testament, dated December 6, 1882 (evidently a mistake in its date), and which was proved and admitted to probate May 31, 1882. By the first four clauses of his will he bequeathed certain specified properties to his widow, Caroline White, and to L. S. Shipman, Henry C. Lyman, and William A. Lyman, and then, in the fifth clause of his will, bequeathed the interest on the sum of $40,000 to his wife during her life, and at her death bequeathed the same to 14 legatees, the said fifth clause being as follows:

"Fifth. I give and bequeath the interest or income on forty thousand dollars to my well-beloved wife, Caroline, during her natural life, and hereby

direct my executors hereinafter named to pay to her, my wife Caroline, said interest or income every six months, upon taking her receipt for the same; and I do further herein direct and declare that the provisions in this my will contained, for the benefit and maintenance of my well-beloved wife, Caroline, and the various gifts and bequests herein made to her, or for her benefit, are to be received by her, and are to be, in lieu of dower in any and all my property I may be seised or possessed at the time of my decease. And on decease of my said wife, Caroline, I do hereby give and bequeath the said forty thousand dollars and accrued interest or income so held in trust by my executors, or their survivor or survivors: To the Talladega College, of Alabama, (5) five thousand dollars; to the Congregational Church in the village of Sherburne, (5) five thousand dollars; to the Methodist Episcopal Church in said village of Sherburne, (3) thousand dollars; to the Universalist Church in said village of Sherburne, (2) thousand dollars; to the Baptist Church in said village of Sherburne, (1) one thousand dollars; to the Protestant Orphan Asylum of the city of Utica, (1) one thousand dollars; to the supervisor of the town of Sherburne, and his successors in office, (5) five thousand dollars, in trust, the interest or income only to be used in the support or relief of poor widows and fatherless and orphan children in the town of Sherburne, as he, the said supervisor, may deem meet and proper; to Charles Lyman Carrier, one thousand (1) dollars; to Devillo White, son of Alexander White, (5) thousand dollars; to M. D. Botsford, (5) five thousand dollars; to Alexander White, (5) five thousand dollars; to L. S. Shipman, (2) thousand dollars; to Ellen Van Keuren, (2) two thousand dollars; Annie R. Botsford, (2) two thousand dollars."

By the succeeding clauses of his will he created several trusts, and gave numerous legacies and specified properties, to a large number of legatees therein named; and then follow the fourteenth and fifteenth clauses of the will, which are as follows:

"Fourteenth Clause. I hereby order and direct that, if my estate is not sufficient to pay all the legacies above mentioned in full, they are to be paid pro rata, excepting the legacy of $40,000 to my wife, Caroline.

"Fifteenth. I give and bequeath to my executors hereinafter named all of the rest, residue, and remainder of my estate, in trust, to sell and collect the same, and pay L. S. Shipman (2) two thousand dollars, and finally divide the balance into eight (8) equal parts and shares, and give them to Rush W. Carrier, Henry C. Lyman, William A. Lyman, Asa White (son of Richmond White), Devillo W. Corbin, Chester W. Corbin, Fred White, Ralph J. White, each one part or share."

The executors had a judicial settlement of their accounts, which resulted in a decree being entered March 2, 1885, leaving in their hands only the sum of $40,000 mentioned in said fifth clause. Caroline White, the widow, died December 6, 1897; and this proceeding is now taken to procure an accounting, and a decree distributing the said $40,000 which the executors have held in trust pursuant to said fifth clause. It will be observed that the sum of the several legacies bequeathed in and by said fifth clause, as hereinbefore recited, amount to the sum of $44,000; and it appears, upon an examination of the original will, that the testator had attempted to change two of the said bequests as originally made by him, and had written upon the margin of his will, "These interlinings were made by me (Devillo White) before signing," and, if his attempt had been effectuated, the sum of the bequests would have equaled $40,000; but upon probate of the will it was adjudicated that the bequests were as above recited. Several questions are involved respecting a distribution of said $40,000.

First, it is claimed that the bequest to the supervisor of the town of Sherburne is void for indefiniteness, and for other reasons alleged. I think that such claim is well founded, and that the attempted bequest of $5,000 to the supervisor of the town of Sherburne is invalid. Fosdick v. Town of Hempstead, 125 N. Y. 581, 26 N. E. 801; Rose v. Hatch, 125 N. Y. 427, 26 N. E. 467; Read v. Williams, 125 N. Y. 560, 26 N. E. 730; Holland v. Alcock, 108 N. Y. 312, 16 N. E. 305; Iseman v. Myres, 26 Hun, 651; Hope v. Brewer, 136 N. Y. 126, 32 N. E. 558; Edson v. Bartow, 10 App. Div. 104, 41 N. Y. Supp. 723; People v. Powers, 147 N. Y. 104, 41 N. E. 432; Butler v. Trustees, 92 Hun, 96, 36 N. Y. Supp. 562.

Such bequest being void, the second and principal question is whether the $5,000 thereby attempted to be bequeathed passes wholly to the residuary legatees, or whether the other 13 legatees are to receive the full amount of their legacies, and thereafter the overplus, only, passes to the residuary legatees. Counsel for the executors claim that under this will the void legacy to the supervisor vested at once, upon the death of the testator, in the residuary legatees, or else in his next of kin; and he cites numerous authorites holding that in wills, where there is a general residuary clause, the lapsed or void legacies pass to the residuary legatees. But an examination of these cases discloses the fact that the question decided by them arose generally between the residuary legatee and the next of kin, and did not arise as between general legatees and residuary legatees. As between general legatees and residuary legatees, I apprehend that the contrary is the correct rule; that the presumption, both in law and equity, is in favor of general legacies; that the residuary legacies embrace only that which remains after all the bequests of the will are discharged, and the debts of the testator are satisfied; and that a strict residuary bequest must defer to general legacies, and can only be paid after all such claims are satisfied. Redf. Law & Prac. Sur. Cts. (5th Ed.) 625. As before stated, the rules of construction which have been adopted to the contrary have arisen in controversies between residuary legatees and next of kin; and it has been universally held, in cases where there did not appear to be any deficiency of assets to pay the general legacies, and there was a general residuary clause, that lapsed and void legacies go to the residuary legatees. In order that there should be a residuary estate, the provisions of the will must be fulfilled, and something must be left over. This rule requires that all the debts and general legacies should be paid in full before there is any residuary estate. It is difficult for me to understand how it can be consistently claimed that there is a residuum until the debts and general legacies have been satisfied in full. In the case at bar, the testator has effectually disposed of $39,000 of this $40,000 fund. It is true, he attempted to dispose, as the will was probated, of $44,000. By reason of this discrepancy this controversy arises. If the sum of all these 14 legacies amounted to $40,000 only, there would have been no question here to discuss, and no doubt but that the void legacy would pass to the residuary legatees. In considering this question, it is necessary to bear in mind that the testator supposed all of his bequests to be valid, and, this being so, he never intended that

any part of this $40,000 should pass to his residuary legatees. As before stated, the question does not arise between the residuary legatees and the next of kin, but comes up between the residuary legatees and other general legatees whose legacies are unpaid. As between general legatees whose legacies are unpaid in whole or in part, and residuary legatees, lapsed or void legacies go to make up the deficiency in paying the general legacies. It appears to me that this question should be disposed of precisely in the same manner as it would be had the testator died leaving a will, the whole of which consisted in giving his widow the income of his entire estate for her life, and, subject thereto, making the 14 bequests specified in the fifth clause, and then a residuary clause, and then, upon a settlement of his estate, there should be found to be but $40,000 for the payment of the legacies. Can it be doubted that in such case the 13 legatees, other than the supervisor, would have received the $39,000 bequeathed to them, and that the $1,000 over only would pass to the residuary legatees? I am unable to see any distinction between such a case and this, unless it be in the fact that, in the case supposed, the testator could not be said to have known that his estate would yield but $40,000 to pay the $44,000 of legacies, while in this case the testator knew that by the fifth clause he had only $40,000 to bequeath. In the one case the testator makes a mistake as to the amount he has to bequeath, and in the other case the testator makes a mistake in the amount of his bequests. In either case he intends to give to each legatee the sum specifically bequeathed to him, and in both cases the legatee is prevented from receiving that sum only by the insufficiency of the fund from which it must be paid. In either case the amount of a void or lapsed legacy should go to complete the intention of the testator in respect to the general legacies, before reaching the residuary clause, which operates only to transfer to the residuary legatee such portion of the testator's property as he has not otherwise validly disposed of. Riker v. Cornwell, 113 N. Y. 124, 20 N. E. 602. The question is not whether the amount of the void legacy to the supervisor is undisposed of by the will, or, because so, passes to the next of kin; but it is whether the void legacy, which by the testator was made payable from the principal fund of $40,000, shall go to the other 13 legatees of that fund, whose legacies, by reason of the mistake of the testator, cannot otherwise be paid in full, or shall be taken altogether out of that fund, and away from the legatees between whom the testator intended and undertook to divide it, and carried to the general residuary legatees, whom the testator never intended should receive any part of it. He undertook to divide the principal fund, and the whole of it (which he had separated from all the rest of his estate), among 14 legatees. However, by reason of what we may call a mistake of his, they would each receive only about 90 per cent. of the amount actually bequeathed to them, if all of the 14 legacies were valid; but one legacy is void, and by reason thereof there is enough to pay the other legacies in full. The scheme and intention of the testator were to divide the whole $40,000 among these 14 legatees, and to give each one the amount named by him. There is clearly discernible an actual, active intention on the part of the testator that

each of the 14 should share in the $40,000, to the amount of his legacy. It is just as clear that he had no intention that either of the residuary legatees should have any part of this $40,000. To now carry $5,000 of it over to such residuary legatees, and leave 13 of the 14 intended beneficiaries of the $40,000 short of the amounts bequeathed to them, would clearly subvert the intention of the testator in respect to each and every one of the 13 legatees whose legacies are valid bequests. When a principal fund or a particular estate is to be distributed among certain persons, in amounts named, pursuant to testamentary bequests, so long as there is sufficient to pay all of the valid bequests in full there can be no ground upon which they should be required to abate, even though the amount would have been insufficient if all had been valid. The ordinary general residuary clause of a will, such as in this case, is for the overflow after all other general bequests have been satisfied in full.

I think these views are substantiated by the cases of Wetmore v. St. Luke's Hospital, 56 Hun, 313, 9 N. Y. Supp. 753, and Gilbert v. Taylor, 76 Hun, 92, 27 N. Y. Supp. 828. In the latter case the court says, "The residuary legatee takes only what is left after all other legacies given by the will have been paid," and quotes with approval this language from Wetmore v. St. Luke's Hospital:

"In order that there should be a residuary estate, the provisions of the will must be fulfilled, and something must be left over. Debts and legacies must be paid, and then the residuum goes to the residuary legatees. But, until the debts and legacies are paid, it is difficult to see how, under the residuary clause, residuary legatees are entitled to receive anything."

The argument of the learned counsel for the executors is, as I understand it, based wholly upon the proposition that the testator (1) only gave each of the 14 legatees 90 per cent. of the amount he names for them; and (2) that he only intended to give to them that percentage. From these two propositions he draws the legal conclusion that, having given them only that percentage, the void legacy cannot be taken to "augment the amount of their gifts." The trouble with his conclusion is that neither proposition upon which it rests is correct. The testator actually, in his will, bequeathed to each legatee named in the fifth clause the sum which they now claim, and it is equally certain that such bequest represented his actual intention. The trouble is, not that it was not bequeathed to them, and that he did not intend to bequeath it, but simply in the fact that there was not enough of the fund to satisfy his bequests, if all had been valid. The argument of counsel seeks to make the deficiency in the fund do the double duty of cutting down the amount actually bequeathed in the testator's own words, written by his own hand, and of construing his intention to have been other than his plain words necessarily import. He seeks to make the mistake in figures, and the failure on the part of the testator to notice that the sum of the 14 legacies was greater than $40,000, a basis for saying that he neither bequeathed, nor intended to bequeath, the sums which the will specifically names as bequests to these legatees. While conceding that the excess in the legacies over the amount of the fund was a mistake on the part of the testator, he endeavors to make that mistake,

which the testator died without discovering, or discovering that he had not rectified it, the foundation and only support of his next claim, viz. that the testator did not intend, and did not in fact give, more than 90 per cent. of the legacies now claimed; that when the testator said, "I give and bequeath to the Congregational Church in the village of Sherburne five thousand dollars," he only intended to bequeath, and did in fact only bequeath, that church $4,500. On the contrary, it seems clear that he did bequeath the exact sums these legatees now claim, and he did intend to bequeath same to them; and it is the fact of the deficiency in the fund, and that fact alone, of which he knew not, which raises any question as to whether his clear and plain intentions, emphatically expressed in his will, can be carried out. It is true that, if all of the legacies had been valid, the intentions could not be carried out. By reason of one being void, his certain intentions can be carried out in respect to 13 of the 14 legacies involved in the fifth clause. Counsel argues that it was the intention of the testator that each legacy "should abate equally, because he had disposed of four thousand dollars more than the fund." I cannot assent to any such proposition, and I am loth to believe that the counsel means to assert that the testator had any such actual intention. He probably means to argue that such is the law applicable, because of the testator's mistake. It would be imputing the grossest absurdity to a man of strong character, wide intelligence, and great practical experience, to say this testator deliberately considered and formed such an intention. It is impossible to predicate such an intention upon the conditions of the fifth clause, without at the same time asserting that that which all have treated as a mistake was purposely done. As before stated, it cannot possibly be said that this testator had an actual, active intention that any part of this $40,000 should go to his residuary legatee. Such an event was wholly without and beyond his contemplation. He gave it all away to others, and more too, and except for the latter fact no controversy would now arise respecting it. On the other hand, it is just as certain that he did have an actual, active intention that each of his designed beneficiaries of that fund should receive the amount which he explicitly directed should be paid to them therefrom. To that point his thoughts and purposes were directed, and the amount going to each particular legatee passed under his consideration, and received his sanction and approval. It is true that he made a mistake in the aggregate amounts bequeathed. But, notwithstanding that mistake, it is still possible, by reason of the void legacy, to carry out his intentions as to all but one of the 14 legatees named. The fulfillment of this clear intention works no harm to that one. He neither receives more nor less by reason thereof. Thereby right and justice, according to the intention of the testator, is done to the 13 and no wrong to the other. The latter is deprived of the benefit of his legacy by reason of a rule of law which the testator knew not of. By this construction the residuary legatees do not receive any part of the $40,000 until all of the valid legacies have been paid in full. They can find no fault with a rule so clearly in accordance with the emphatically expressed intention of their testator. There

is no case holding to the contrary of this construction, and there never should be, because such a holding would subvert the intentions of the testator, and would be contrary to the plain justice and right of the matter. Van Kleeck v. Dutch Church, 20 Wend. 457, was a case where the devisee was by law incapable of taking, and the court held that the devise did not go into the residuum, because, upon a review of the whole of the will, including the void clause, such did not appear to be the intention of the testator. In King v. Woodhull, 3 Edw. Ch. 79–82, the court says, "It may be argued in most cases that the testator does not mean that the residuary legatee shall take what is previously given from him, for he does not contemplate the case." And this was quoted with approval in Morton v. Woodbury, 153 N. Y. 254, 47 N. E. 283. "'Residue' means all of which no effectual disposition is made by the will, other than by the residuary clause." 1 Jarm. Wills, 764. The testator had effectually, by valid legacies, given away $39,000 of the $40,000 fund, leaving only $1,000 to fall into the residuum. There is no question involved here requiring any distinction to be drawn between the actual intention of the testator, and the legal intention to be imputed. The language of the will is plain and unambiguous, and his actual intention, when ascertained, becomes his legal intention; and it is the duty of courts to divide this fund among the legatees whom he said should share it, in precisely the amounts he said each should have, in respect to every valid legacy thereby given, so long as the amount of the fund is sufficient to pay each valid legacy in full.

Counsel for the executors refers to the case of Wetmore v. Institution (Sup.) 3 N. Y. Supp. 179, and asserts that it is "a direct adjudication that the void legacy in this case cannot go in augmentation of others abating, but must pass under the general residuary clause." That case is instructive, and properly cited in his argument, but, in my opinion, is not an adjudication upon the point. It was an action brought for the construction of the will of Mary Hopeton Drake. Her will contained three residuary clauses, and the court held that, under the particular language of the will, it was not the intention of the testatrix that the amount of lapsed legacies in the seventh clause should go to make up the abated legacies in the eighth, and therefore they should fall into the general and last residuary. That will of Mary Hopeton Drake has been passed upon three times by the supreme court since then. See Trust Co. v. Black (Sup.) 30 N. Y. Supp. 453, affirmed 31 N. Y. Supp. 1134; Wetmore v. St. Luke's Hospital, 56 Hun, 313, 9 N. Y. Supp. 753; and Gilbert v. Taylor, 76 Hun, 92, 27 N. Y. Supp. 828. The two last cases are more nearly in point here, and the principles enunciated are in accord with those which lead me to the result herein indicated.

Decreed accordingly.